# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00667-CR

**Lynda Marie Kirby aka Lynda Dunn, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
### NO. 01-1172-K36, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING

## O P I N I O N

A jury found Lynda Kirby guilty of three counts of aggravated sexual assault, three counts of indecency with a child by contact, and two counts of indecency with a child by exposure, all arising out of allegations that she sexually abused her son T.H.K.  She was sentenced to twenty-five years in prison for each of the aggravated assault counts and ten years in prison for the indecency with a child counts.  The jury recommended that Kirby be placed on community supervision for the two counts of indecency with a child by exposure.[1]

Kirby challenges her conviction in twenty-four points of error. We will group Kirby's points of error in the following issues: (1) the district court erred by admitting evidence that she had

---

[1] The district court ordered that the prison terms run concurrently and that Kirby be placed on community supervision for her ten-year sentence after she completed her term in prison.

been sexually abused in the past, (2) the district court erred by failing to limit the jury's consideration of the State's evidence in light of the State's election of the acts it relied upon for conviction, (3) the evidence is insufficient to sustain the conviction in light of the State's election to rely on acts occurring on or about March 31, 2001, and (4) the conviction for both indecency with a child by contact and indecency with a child by exposure violates the Double Jeopardy Clause of the United States Constitution.[2] We hold that the district court erred by admitting testimony that Kirby was a victim of sexual abuse. We reverse the convictions and remand to the district court for a new trial.

## BACKGROUND

Terrance Kirby and Lynda Kirby were married in 1992. T.H.K. was born in 1993, and the couple divorced while he was still an infant. Soon after the divorce, Terrance married Lynn Kirby, and T.H.K.'s primary residence has remained with his father and stepmother in Bastrop.[3] Before making his outcry of sexual abuse, T.H.K. traveled to Kirby's home in Williamson County every other weekend to visit her.

In April 2001, T.H.K. told his first grade teacher, Melissa Rathman, that his mother was sexually abusing him. Rathman testified that T.H.K. had previously been an exemplary student but that she noticed a "drastic change" in his behavior in the first week of April 2001. T.H.K. became defiant and angry. He complained of stomachaches and other physical problems, but the

_____

[2] The State concedes that Kirby's convictions for indecency with a child by exposure violate the double jeopardy clause in light of her conviction for indecency with a child by contact arising out of the same acts.

[3] For clarity, we will refer to Terrance and Lynn Kirby by their first names, and to Lynda Kirby as Kirby.

school nurse found nothing wrong with him. When Rathman sat down with T.H.K. and asked about his problems, T.H.K. confided that "he just felt all twisted up inside because he had so many secrets going on." When Rathman asked him to describe his secrets, T.H.K. told her that he had been taking showers with his mother and that, in the shower, his mother made him touch her "pee-pee." He demonstrated to Rathman how his mother would have him touch her vagina. He told Rathman that his mother would kiss him with her tongue, touch and kiss his penis, and have him rub her breasts.

A couple of weeks later, T.H.K. told Rathman, "I want to talk to you about a letter I wrote to God." T.H.K. then described how his mother would push his face into her vagina while the two were in the shower. He then bent over and grabbed his knees saying, "This is what she does in the shower, and she makes me put my penis in her bottom. . . . Sometimes it doesn't go all the way in so she'll turn around and she'll push it in." During this conversation, T.H.K. also described a sexual game he played with his older half-sister.[4]

After T.H.K.'s initial outcry, Rathman notified the school counselor and child protective services. She also called T.H.K.'s father and stepmother, Terrance and Lynn. T.H.K. was interviewed by Mindy Graber, a forensic interviewer at the Children's Advocacy Center in Bastrop. The videotape of that interview was not introduced into evidence. It appears from testimony in the record that in this interview T.H.K. minimized his mother's abuse and denied some of the allegations he had reported to Rathman. T.H.K. was referred to social worker Candra Houston for therapy. Although it took some time for Houston to establish a rapport with T.H.K., he eventually felt

---

[4] Lynda Kirby had a daughter, A.B., from a prior relationship. A.B. is approximately five years older than T.H.K. and lived with Kirby up until the time of trial. The incident described in T.H.K.'s testimony was purported to have taken place when T.H.K. was four and A.B. was nine.

comfortable enough to tell her about the sexual abuse. Houston testified that "for approximately the last 18 months of our treatment together, [T.H.K.] has been consistent over and over again with the details and the nature and the severity and the chronicity of the abuse." Houston testified that T.H.K. exhibited a number of behaviors that were consistent with a history of sexual abuse. In May 2002, about a year after T.H.K.'s initial outcry, Houston became concerned that T.H.K. was suicidal. She testified that T.H.K. was very angry during therapy and he told Houston that he wanted to die; he was extremely nervous about seeing his mother in court.

On May 10, 2002, T.H.K. was admitted to the Shoal Creek psychiatric hospital in Austin. Records indicated that T.H.K. reported hearing voices telling him he did not deserve to live and seeing hallucinations of "mean clowns." In a "Child Self Assessment," T.H.K. checked a box indicating "I have problems with [l]ying or stealing." T.H.K. was discharged four days later with a diagnosis of "major depressive disorder" and was prescribed Zoloft. He quickly improved after the hospitalization but remained in therapy through the time of trial in July 2004. Terrance and Lynn both testified that they were unhappy with the care T.H.K. received at Shoal Creek and felt that the prescribed medication was unnecessary. They testified that they stopped giving T.H.K. his medication soon after he left the hospital and that T.H.K.'s condition greatly improved with continued therapy and the use of a fish oil supplement that promotes emotional stability.

At the time of trial, T.H.K. was ten years old and had not seen his mother since his initial outcry over three years earlier. T.H.K. testified articulately and at length about the abuse. He testified that the abuse had occurred during his biweekly visits with his mother and that he and his mother often showered together twice a day. In the shower, T.H.K. would rub his mother's breasts

4

and that she would "bend over and spread her bottom apart and make me stick my [penis] in her bottom, which—I now I'm knowing that is sex." He testified that his mother would also bend over and suck on his penis and that he would suck and lick her vagina. T.H.K. recounted that he was directed to rub his mother's vagina and that she would french kiss him. T.H.K. stated that the abuse occurred "many times" and that it had been happening for as long as he could remember. He did not name any specific date or time that the abuse took place. T.H.K. testified that abuse "probably" took place on his last visit with his mother but qualified, "I don't remember much." This last visit took place on either the second or third weekend in March 2001.[5]

Kirby testified in her own defense and denied abusing her son. She insisted that she stopped bathing with her son in 1997, when he reached the age of four. However, once in the summer of 2000 she had showered with him in order to rinse off from the beach while they were vacationing. Kirby did not recall the specific events of her last visit with T.H.K. before his outcry. She did recall taking T.H.K. swimming and to a park to play tennis. Kirby testified that she did not shower with T.H.K. but would have turned on the water for him and put shampoo in his hair. She recounted that T.H.K. slept in her bed that weekend because she had been raising Persian kittens in T.H.K.'s room and because she did not trust T.H.K. to play gently with the newborn kittens.

Three mental health experts testified on Kirby's behalf. Based on hypothetical questions, psychiatrist Richard Coons testified that T.H.K.'s account of sexual abuse could be based

---

[5] None of the witnesses recalled exactly when T.H.K. last visited with Kirby. Kirby placed the visit during spring break, either the second or third weekend of March 2001. She testified that a scheduled visit for the first weekend in April was canceled so that T.H.K. could attend a T-ball game. The State alleged that the abuse took place on or about March 31, 2001.

5

on delusional thinking. Matthew Ferrara, a forensic psychologist specializing in sex offenders agreed with Dr. Coon's conclusion. Dr. Ferrara testified that it is possible for a child to make a false statement about sexual abuse and then come to believe that statement through repetition in therapy. Considering T.H.K.'s statements and his mental health history, Dr. Ferrara testified that the allegation of abuse "looks like it's more in line with a product of a delusional process or fantasy process." Dr. Ferrara also discussed the characteristics of sex offenders generally. In response to a hypothetical question describing Kirby, Dr. Ferrara testified that she did not even come close to matching the profile of a woman who would act out sexually with her own child.

Kirby was evaluated by Vivian Lewis, a recognized expert in sex offender treatment with over twenty years' experience in the field. Lewis testified that she met with Kirby over the course of several months, administering a number of psychological tests. Lewis testified that Kirby's performance and her life history were inconsistent with the profile of convicted female sex offenders:

> Overall, I did not see what I would have expected to see or what I have actually seen or read about or received training about in terms of female sex offenders. The meat of what I would have been looking for was simply not there.

On cross-examination, Lewis agreed that not all female sex offenders fit the normal profile. Lewis admitted that Kirby's history of chemical dependency, "sexually acting out," family instability—and the fact that Kirby had been a victim of sexual abuse—were consistent with traits found in the population of female sex offenders.

Having heard all of the evidence, the jury found Kirby guilty on all counts charged.

## DISCUSSION

**Evidence that Lynda Kirby Had Been Sexually Abused as a Child**

In her first issue, Kirby contends that the district court erred in admitting evidence that she had been a victim of sexual assault as a child. She asserts that (1) the evidence was improper character evidence under rule of evidence 404(b), (2) any probative value of the evidence was substantially outweighed by its prejudicial nature under rule of evidence 403, and (3) the district court erred in admitting the evidence and later failing to instruct the jury to disregard it. Because we hold that Kirby's history as the victim of sexual abuse was improper character evidence under rule of evidence 404, we sustain her first issue.

The State first elicited testimony from Detective John Combs that Kirby had been sexually abused by her grandfather. Defense counsel objected to the State's question. At a bench conference, the State argued that the testimony was relevant:

> The fact that she was sexually abused as a child by her grandfather and that the abuse, we'll find out, took place in the bathroom just like these allegations are, I think, highly relevant to this case. Also, if we're going to get into—at some point I'm sure they are going to get into Houston's psychological testimony, maybe even call sex offender therapists; all that would be relevant to—you know, maybe they're going to put in some evidence that she does not fit the profile of a sex offender. But I think particularly the fact that the type of abuse that she disclosed to certain people that she suffered as a child, some of it involves anal sex and it took place in the bathroom. It's very relevant to our case.

Later during this bench conference, the district court asked whether the State would call an expert to testify that a history of sexual abuse like the one described would increase the likelihood that a

7

person would become a sex offender. The State responded, "I believe so, yes. I think we will have one. . . ." The trial court then overruled the objection.

Detective Combs related that Kirby told him that "up until about the age of 10 or 11, her grandfather would take her into the bathroom and have intercourse with her." Combs clarified this hearsay statement, explaining that it was his understanding that the sexual activity was "just vaginal intercourse."

The State elicited another hearsay statement regarding Kirby's early sexual abuse during the direct examination of her ex-husband Terrance. Terrance related that Kirby had told him that she had been sexually abused by her grandfather from the time she was three, that the abuse took place in a bathroom, and that she had become pregnant from that abuse. Defense counsel's objections to this line of questioning were heard outside the presence of the jury, and the trial court again overruled the objection.

Consistent with her objections at trial, Kirby contends on appeal that the admission of these hearsay statements violated rule of evidence 404(b). Rule 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts "to prove the character of a person in order to show action in conformity therewith." Kirby argues that the State was improperly permitted to use the fact that she was a victim of sexual abuse to show that she had a propensity to abuse children. The State's only response is that Kirby's "status as a person who was sexually abused" cannot be characterized as a "crime, wrong, or act" under rule 404(b), and therefore, the rule's prohibition does not apply. However, rule 404(a) generally prohibits the admission of evidence of a person's character or character trait for the purpose of proving action in conformity therewith. We decline

8

the State's invitation to construe Kirby's issue so narrowly. Whether viewed as a character trait under rule 404(a) or an act under rule 404(b), we hold that the evidence was improperly admitted.

By its own admission at trial, the State elicited this hearsay testimony to show that, because Kirby was a victim of past sexual abuse, she was more likely to have committed the offense charged.[6] Although we have found no Texas cases directly addressing the admissibility of a defendant's past sexual abuse in prosecuting the crime of sexual abuse, Kirby has cited several opinions from other states excluding such evidence for the purpose of showing that defendant likely committed a sex offense. *See State v. Pulizzano*, 456 N.W.2d 325, 335-36 (Wis. 1990); *Nelson v. State*, 782 P.2d 290, 296 (Alaska 1989); *State v. Jahnke*, 353 N.W.2d 606, 610 (Minn. 1984). We agree that, to the extent that such evidence is relevant at all, it is character evidence that may not be admitted as proof of guilt. *See* Tex. R. Evid. 404.

In response to Kirby's objection to the admission of evidence that Kirby had been the victim of sexual abuse, the State assured the district court that it would present an expert witness who would link this evidence with Kirby's guilt. The State failed to do so. Even had the State fulfilled its promise to call an expert on sex offenders to tie Kirby's history to a sex offender profile, such testimony would not have been admissible. In *Bushell v. Dean*, this Court held expert testimony that the defendant met the profile of a sexual harasser to be inadmissible character evidence under rule of evidence 404. 781 S.W.2d 652, 656 (Tex. App.—Austin 1989), *rev'd on*

---

[6] The State has not argued that this evidence was admissible for some other purpose such as those listed in rule 404(b). *See* Tex. R. Evid. 404(b) (evidence of other crimes, wrongs or acts admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident).

9

*other grounds*, 803 S.W.2d 711 (Tex. 1991) (appellant failed to preserve evidentiary issue). In reaching this holding, this Court cited cases from other jurisdictions excluding profile testimony in child abuse cases. *See id*. at 656 (citing *United States v. Gillespie*, 852 F.2d 475, 479-480 (9th Cir. 1988); *State v. Hansen*, 743 P.2d 157, 161 (1987)); *see also United States v. Traum*, 60 M.J. 226, 234 (CAAF 2004) (use of any characteristic "profile" as evidence of guilt in criminal trial improper); *Brunson v. State*, 79 S.W.3d 304, 312-13 (Ark. 2002) (citing numerous federal and state cases); *Pulizzano*, 456 N.W.2d at 335-36; *Jahnke*, 353 N.W.2d at 610; *State v. Sanders*, 303 S.E.2d 13, 17-18 (Ga. 1983); *cf. Brewington v. State*, 802 S.W.2d 691, 692 (Tex. Crim. App. 1991) (evidence that defendant was "fixated pedophile" inadmissible to show guilt in sexual abuse prosecution).

A defendant may open the door to such testimony by presenting evidence that she does not meet a profile. However, that did not occur in this case. *See Maynard v. State*, 685 S.W.2d 60, 66 (Tex. Crim. App. 1985) (defendant not required to sit mute in face of harmful evidence to preserve issue for appellate review). After the State rested without calling an expert, the defense made an unsuccessful motion to strike the testimony that Kirby had been the victim of sexual abuse. In arguing this motion, defense counsel stated that he "carefully planned" to avoid raising the characteristics of sex offenders at the guilt/innocence phase of the trial and planned to present this testimony only at punishment. He explained that, in light of the district court's ruling admitting the evidence, he would now have to address the issue:

> We anticipated that if somehow this issue opened up [our experts] would be prepared to talk about this issue, but in order to now explain or meet this evidence, I'm going to have to put that issue on. Ms. Kirby was not prepared for that revelation in court. She had not been prepared to testify about that in the guilt/innocence phase. I had not planned to open the issue up at the guilt/innocence phase.

10

Under these circumstances, Kirby did not open the door to the objectionable evidence of her prior sexual abuse.

Error in the admission of evidence is subject to a harm analysis under rule 44.2(b) of the rules of appellate procedure. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). A violation of the evidentiary rules that results in the erroneous admission of evidence is non-constitutional error. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); *Tate v. State*, 988 S.W.2d 887, 890 (Tex. App.—Austin 1999, pet. ref'd). Any non-constitutional error "that does not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b); *see also* Tex. R. Evid. 103(a) (error may not be predicated on admission or exclusion of evidence unless substantial right of party affected). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See King*, 953 S.W.2d at 271. A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but slight effect on its verdict. *See Johnson*, 967 S.W.2d at 417.

This was a close case resolved by a credibility determination between T.H.K. and Kirby. T.H.K. testified that his mother sexually abused him. His testimony was bolstered by his outcry statements to his first grade teacher. The State also presented testimony from T.H.K.'s therapist that his behavior was consistent with his being the victim of sexual abuse. However, T.H.K. was shown to have been mentally ill, at one point requiring hospitalization for hearing voices and having hallucinations. He also assessed himself as having problems with lying or stealing. Expert witnesses testified that T.H.K.'s accusations could be the product of delusional thinking and

that, after repeating such a story in therapy, a child could come to believe it was true. Kirby testified and denied abusing her son. The testimony that Kirby had been the victim of sexual abuse, even when discounted by expert testimony, improperly called into play the commonly held belief that victims of sexual abuse are more likely to abuse others. Viewing the record as a whole, we are not fairly assured that the testimony that Kirby had been the victim of sexual abuse as a child did not influence the jury's credibility determination. Accordingly, we sustain Kirby's first issue.

## CONCLUSION

We hold that the district court erred by admitting evidence that Kirby had been the victim of sexual abuse. We reverse the convictions and remand the case for a new trial.[7]

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton: Opinion by Justice B. A. Smith; Concurring Opinion by Justice Pemberton

Reversed and Remanded

Filed: April 6, 2006

Publish

---

[7] Because we reverse the convictions on this ground, we need not reach Kirby's other points of error. *See* Tex. R. App. P. 47.1.