NO. 07-06-0204-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



SEPTEMBER 18, 2006


______________________________



PAMELA SMITH, 



 Appellant


v.



LIVINGSTON HEARING AID CENTER, INC., 



 Appellee

_________________________________



FROM THE COUNTY COURT AT LAW NO. THREE OF LUBBOCK COUNTY;



NO. 2006-598,743; HON. PAULA LANEHART, PRESIDING


_______________________________



Memorandum Opinion


_______________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

 Pamela Smith (Smith) appeals from a temporary injunction entered in favor of
Livingston Hearing Aid Center, Inc. (Livingston). Via three issues, she contends that the
trial court abused its discretion in 1) entering the decree because the underlying covenant
not to compete was unenforceable and 2) denying her attorney's fees. We affirm.

Background


 After becoming an employee with Livingston, Smith executed a contract containing
the following covenant.

 In further consideration of the sum as set forth in the attached Schedule of
Terms, during the period commencing on the Effective Date and ending
three (3) years after the termination of Employee's employment with
Employer for any reason, Employee shall not 'compete directly or indirectly
with the business of the Employer' except as Employer shall otherwise
consent in writing or except in furtherance of Employee's duties hereunder. 
'Compete directly or indirectly with the business of the Employer' shall be
deemed to include . . . engaging or having a material interest, directly or
indirectly, as owner, employee, officer, director, partner, sales representative,
stockholder, capital investor, lessor, renderer of consultation services or
advice, either alone or in association with others, in the operation of any
aspect of any type of business or enterprise competitive with the business
or operation of the Employer or any of its affiliates, including, but not limited
to the hearing aid business, within the geographic area as set forth in the
attached Schedule of Terms. 


 The Schedule of Terms alluded to specified that Smith was to be compensated
$3000 and that the geographic boundaries mentioned were "[a]ll counties in which
Livingston Hearing Aid Center, Inc., operates, including, but not limited to: Lubbock County,
Texas, and contiguous areas[,] Ector County, Texas, and contiguous areas[,] Potter
County, Texas[,] Randall County, Texas [and] Curry County, New Mexico[.]"

 Smith worked for Livingston dispensing hearing aids for a short while. However, she
left its employ and began working for another entity involved in similar business. Livingston
discovered this and sued to enforce the covenant. The relief sought consisted of, among
other things, a temporary injunction. The latter was granted, and the trial court temporarily
enjoined her from 

 engaging or having a material interest, as owner, employee, officer, director,
partner, sales representative, renderer of consultation services or advice, in
the testing of hearing, or in the sale or service of hearing aids or hearing
devices, within the city of Lubbock and a distance of seventy-five (75) miles
from the city of Lubbock, and within Scurry County, Texas. 


From that order, Smith appealed.

 


 Issue One

 Smith initially contends that the trial court abused its discretion in granting the
preliminary relief because the underlying covenant not to compete was "clearly
unenforceable." In effort to explain why it was unenforceable, she posits that it had to
"meet certain statutory requirements" expressed in §15.50 of the Texas Business and
Commerce Code. It did not, she continued, because 1) "there is no 'otherwise enforceable
agreement' to which the covenant . . . is included," 2) "the covenant . . . is not 'ancillary to'
the agreement," and 3) "no consideration was given 'at the time' the agreement was
made." Given the tenor of her arguments, one readily sees that Smith asks us to resolve,
via an appeal from an order granting a temporary injunction, the ultimate question of
whether the covenant is enforceable under §15.50. Yet, that is not something we can do
via the procedure involved for the merits of the case are not implicated when one petitions
for a temporary injunction. Reach Group L.L.C. v. Angelina Group, 173 S.W.3d 834, 837
(Tex. App.-Houston [14th Dist.] 2005, no pet.) (stating that at a temporary injunction
hearing the ultimate merits of the case are not at issue); Tom James of Dallas, Inc. v.
Cobb, 109 S.W.3d 877, 882-83 (Tex. App.-Dallas 2003, no pet.) (stating that "any appeal
of an order granting or denying a temporary injunction based on a covenant not to compete
does not present for appellate review the ultimate question of whether the covenant is
enforceable under section 15.50 of the business and commerce code"); accord Loye v.
Travelhost, Inc., 156 S.W.3d 615, 620 (Tex. App.-Dallas 2004, no pet.) (declining to
address, via an appeal from an order granting a temporary injunction, the validity of the
covenant not to compete). In other words, at a temporary injunction hearing, the trial court
is to assess whether the applicant has a probable right to the relief sought and faces a
probable risk of imminent and irreparable injury if preliminary relief is not granted. Tom
James of Dallas, Inc. v. Cobb, 109 S.W.3d at 882. The trial court is not to resolve the
ultimate merits of the controversy. Reach Group L.L.C. v. Angelina Group, 173 S.W.3d
at 837; Tom James of Dallas, Inc. v. Cobb, 109 S.W.3d at 882. So, if the trial court cannot
use the interim procedure to resolve the merits of the underlying claim, neither can the
reviewing court. Tom James of Dallas, Inc. v. Cobb, 109 S.W.3d at 882-83. 

 In sum, by arguing that the covenant at bar fails to comport with §15.50 of the
Business and Commerce Code, Smith posits a contention which we cannot permissibly
resolve via an appeal from an order granting a temporary injunction. Tom James of Dallas,
Inc. v. Cobb, supra; Reach Group L.L.C. v. Angelina Group, supra. Its resolution must
await the entry of a final judgment on the merits. Loye v. Travelhost, Inc., 156 S.W.3d at
620. Consequently, her first issue is overruled.

 Issue Two

 Through her second issue, Smith addresses the scope of relief granted by the trial
court. That is, she poses the question of "whether the limitations to time, geographical
area, and scope of activity [contained in the covenant] are reasonable and do not impose
a greater restraint than is necessary to protect the goodwill or other business interest of the
employer." As posed, the argument again presents us with the task of assessing the
validity of the covenant and the merits of the suit. And, for the same reasons expressed
under issue one, that task is not one that we can permissibly assume. 

 Again, all must remember that in granting a temporary injunction, the trial court
simply attempts to maintain the status quo until the cause can be tried on its merits. 
Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002). Left for another day is the
matter of whether the claims underlying the suit have merit. So, in granting a temporary
injunction, the trial court at bar was not declaring that the covenant at issue was valid. It
simply sought to maintain the status quo. 

 Yet, we do note that the relief ordered was not that expressed in the contract
between Smith and Livingston. Through the latter, Smith purported to refrain from
competing in "[a]ll counties in which Livingston Hearing Aid Center, Inc., operates,
including, but not limited to: Lubbock County, Texas, and contiguous areas[,] Ector County,
Texas, and contiguous areas[,] Potter County, Texas[,] Randall County, Texas [and] Curry
County, New Mexico[.]" Moreover, the trial court enjoined her from competing "within the
city of Lubbock and a distance of seventy-five (75) miles from the city of Lubbock, and
within Scurry County, Texas." We take judicial notice of the fact that a 75-mile radius
around the City of Lubbock may encompass counties that are not "contiguous" with that
city. Nonetheless, evidence appears of record suggesting that the area within which
Livingston marketed its services comprised "about 90 miles" around Lubbock. 
Furthermore, Smith testified that she treated patients who resided within 75 miles from
Lubbock. So, one could reasonably deduce that the company operated within that 90-mile
range as represented by Livingston. (1) Additionally, the status quo existent between the
parties before Smith allegedly breached the covenant encompassed the requirement that
she not compete within the territory wherein Livingston operated. There being evidence
that such territory equated to a 90-mile perimeter around Lubbock, we reject her contention
that the trial court somehow abused its discretion to her detriment by simply restraining her
from competing within a 75-mile radius. See In re Sanders, 159 S.W.3d 797, 800 (Tex.
App.-Amarillo 2005, no pet.) (holding that a trial court abuses its discretion when its
decision fails to comport with controlling guidelines or principles or lacks evidentiary
support). 

 Issue Three

 The third issue raised by Smith involves her recovery of attorney's fees. 
Furthermore, it is founded upon the proposition that the covenant, or aspects of it, was, or
were, invalid or otherwise unenforceable. Because we have not so held, the issue is
premature and, therefore, overruled. 

 We feel confident in the trial court's understanding of the interlocutory nature of the
relief granted and the need to address the ultimate merits of the dispute via a timely trial. 
With this in mind, we affirm the order granting the temporary injunction. 


 Brian Quinn

 Chief Justice

1. Evidence appears of record indicating that Scurry County lies within 90 miles of Lubbock.


04167in"> 
          Appellant’s wife went back to her home and returned with appellant. In conversation
with his wife and the boy’s stepfather, appellant denied the accusation. During that
conversation, he made the statement, “Fine, I did it. I did it just like I did it to Andrea.” The
family called authorities. A Lubbock County sheriff’s deputy responded, took information
from the boy’s mother and determined that the boy was not in further danger.
           A few days later, a sheriff’s department investigator accompanied the boy and his
mother to the Children’s Advocacy Center for an interview. He observed the interview, and
testified the boy’s statement to the interviewer was consistent with the boy’s mother’s
statement to the investigator about the offense.
          When the investigator returned to his office, he found that appellant had left phone
messages to the effect that “he needed to talk to [the investigator.] He needed help.” The
investigator returned appellant’s calls, and made an appointment with appellant, who came
to the sheriff’s office that day. He signed and swore to a typewritten statement the
investigator prepared during their conversation.


 The statement contained this account of
the events that occurred in appellant’s pickup as he drove the boy to appellant’s home to
spend the night: 
“I put [the boy] on my lap and was letting him steer the truck. . . . [The
boy] stopped steering and grabbed his penis. I told him to quit[e] grabbing
that thing or Paw Paw was going to bite it off. He grabbed it one more time.
I took [the boy] off my lap and set him in the middle of the bench seat beside
me. I pulled his shorts down. I pulled his underwear down with his shorts. 
I bent over and put my mouth on his penis. Then I thought to myself, ‘Oh my
god, what am I doing.’ I raised up and apologized to [the boy.] I told him Paw
Paw was sorry. I told him that this is what bad people do, not Paw Paw. I
told him that Paw Paw was going to go to Hell.” 
 
“I went ahead and drove the rest of the way home. We were just a few
hundred feet from home, so it didn’t take long. I would never hurt my
grandson. I love my grandson very much. It only happened for a second or
so. But long enough and it never should have happened. I need help. The
bourbon I had drank and the demons I have been fighting. All of this is what
caused it to happen.” 
 
          Appellant testified at trial. He there maintained the incident was an accident during
horseplay between him and the boy. He testified he moved the boy to the middle of the
pickup’s bench seat next to him and “raised up his shirt” and “went down to blow on his
belly” but the boy “pushed away” from appellant, laughing. When that happened, appellant
said, his chin may accidentally have come into contact with the boy’s penis. He said the
boy’s shorts and underwear had “come down” when the boy moved across the vehicle’s
seat. Appellant admitted he had told differing versions of the events. He testified also that
the emotions reflected in his written statement were a result of his fear because “they’re
trying to throw me in prison.” By the conclusion of his testimony, appellant had claimed
that the sheriff’s department investigator, the boy’s mother and stepfather, and the
Children’s Advocacy Center interviewer all were lying, and that the boy was coerced into
telling the interviewer that appellant “licked his pee-pee.” 
          The jury found appellant guilty as charged in the indictment and assessed
punishment at imprisonment for life. Appellant was sentenced accordingly and this appeal
followed.
 
Analysis
Admission of Evidence of Extraneous Offenses
          The opening paragraph of the narrative in the written statement appellant signed in
the sheriff’s office read as follows:
When I was about seven years old, I walked in on my mother having
sex with my father’s best friend while she was still married to my father. 
Then when I got to my early teens, I was raped in the bathroom shower at
my school by another boy. Then when I turned 17, my father took me to a
whore house, but they turned me down because I was too young. That’s
when my father took me to my mother and my dad talked her into having sex
with me. She never did anything to stop it. I told Investigator Stevens this
to explain what happened with my grandson . . . .
 
          When the State offered the statement into evidence, appellant objected to
admission of that opening paragraph under Rules of Evidence 401, 402, 403 and 404(b). 
The trial court overruled his objections. In his first two issues, appellant contends
admission of the paragraph was error because it had no relevance apart from
impermissible character conformity, and because its prejudicial nature substantially
outweighed any possible probative value. We disagree, and overrule the points of error. 
          Under Rule 401, evidence is relevant if it makes the existence of a fact that is of
consequence to the determination of the action more probable than it would be without the
evidence. Tex. R. Evid. 401; Moses v. State, 105 S.W.3d 622, 625 (Tex.Crim.App. 2003). 
Under Rule 402, there is a presumption of admissibility of relevant evidence. Tex. R. Evid.
402; Moses, 105 S.W.3d at 625. Under Rule 404(b), evidence of other crimes, wrongs,
or acts is inadmissible to prove a person’s character for the purpose of showing action in
conformity therewith. Tex. R. Evid. 404(b); Montgomery v. State, 810 S.W.2d 372, 387-88
(Tex.Crim.App. 1991) (op. on reh’g). See also Casey v. State, 215 S.W.3d 870, 879
(Tex.Crim.App. 2007), citing Johnston v. State, 145 S.W.3d 215, 220 (Tex.Crim.App.
2004). One proper purpose under Rule 404(b) for admission of relevant extraneous
conduct evidence is to rebut a defensive theory. Powell v. State, 63 S.W.3d 435, 438
(Tex.Crim.App. 2001); Ransom v. State, 920 S.W.2d 288, 301 (Tex.Crim.App. 1994) (op.
on reh’g). The trial court’s decision whether to admit evidence under Rule 404(b) will be
upheld on appeal absent an abuse of discretion. Montgomery, 810 S.W.2d at 391. Thus,
we will not intercede as long as the trial court's ruling was at least within the zone of
reasonable disagreement. Id. 
          Extraneous offense evidence is admissible if it rebuts a defensive theory by
showing, for example, absence of mistake or accident. Montgomery, 810 S.W.2d at 387-88. The contention that his contact with the boy’s penis was accidental was a central part
of appellant’s defense. During counsel’s opening statement he told the jury he expected
the evidence to show that appellant did not intentionally or knowingly contact the boy’s
penis. Likewise, appellant testified that any contact he had with the penis was accidental. 
He told the jury at one point, “[m]y chin may have touched it . . . maybe with my chin. But
it was an accident. I did not lick it.” This theory was re-urged in counsel’s closing
argument. The trial court reasonably could have determined that the contents of the
objected-to paragraph of appellant’s written statement had relevance beyond mere
character conformity. Evidence that appellant had been subjected to unusual sexual
events in his youth and that he related those events to the alleged sexual assault of the
victim here tends to rebut a contention that any contact with the child’s penis was simply
an accident.


 
          Appellant relies on Kirby v. State, 208 S.W.3d 568 (Tex.App.–Austin 2006, no pet.)
to support his position that the extraneous conduct evidence admitted at trial was error.
There, the court held that appellant’s history as the victim of sexual abuse was improper
character evidence under Rule 404(b). Id. at 572. In Kirby, the State elicited testimony
from a detective regarding the defendant’s history of sexual abuse for the purpose of
showing that because appellant was a victim of past sexual abuse, she was more likely to
have committed the offense charged. Id. 
          Two factors distinguish the case at bar from Kirby. Unlike the evidence in that case,
here the evidence was provided through appellant’s own statements made in the course
of his admittedly voluntary written statement to a law enforcement officer. And,
significantly, the court in Kirby noted that the State did not make the argument we have
accepted, that the evidence was relevant to rebut a defensive issue. Kirby, 208 S.W.3d
at 573 n.6. Kirby does not assist appellant. 
          Appellant also advanced an objection to the evidence under Rule 403, which
provides that relevant evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. We apply the abuse of
discretion standard when analyzing the trial court’s decision to admit evidence over a Rule
403 objection. Montgomery, 810 S.W.2d at 391. A trial court must balance (1) the inherent
probative force of the proffered item of evidence along with (2) the proponent's need for
that evidence against (3) any tendency of the evidence to suggest decision on an improper
basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues,
(5) any tendency of the evidence to be given undue weight by a jury that has not been
equipped to evaluate the probative force of the evidence, and (6) the likelihood that
presentation of the evidence will consume an inordinate amount of time or repeat evidence
already admitted. Casey v. State, 215 S.W.3d 870, 880 (Tex.Crim.App. 2007); Wheeler
v. State, 67 S.W.3d 879, 888 (Tex.Crim.App. 2002). 
          Rule 403 did not require exclusion of the challenged paragraph of appellant’s
statement. In the context of appellant’s statement to the investigator, we find the contents
of the paragraph strongly probative of the fact his improper contact with the child was a
conscious and knowing act and not an “accident.” Of the three events mentioned in the
paragraph, only the last, involving appellant’s sexual contact with his mother, carried any
great risk of distracting the jury from the issues being tried. The evidence took no
additional time to develop initially, and was mentioned again during the trial only when
appellant took the stand and denied making some of the statements the investigator
recorded.


 Although it does not appear the State had great need for admission of the
challenged paragraph, considering all of the factors, we find no abuse of discretion in the
trial court’s overruling of appellant’s Rule 403 objection. The trial court instructed the jury
concerning the limited purposes for which extraneous offense evidence was admitted. 
          We overrule appellant’s first two issues on appeal.
Denial of Mistrial
          In appellant’s third issue, he contends the trial court erred when it denied his 
request for a mistrial. As noted, during a confrontational conversation among appellant,
his wife and the boy’s stepfather, appellant made the statement, “Fine, I did it. I did it just
like I did it to Andrea.” The statement was revealed to the jury during the State’s
examination of the boy’s stepfather, in his answer to a question asking about appellant’s
response to the boy’s outcry statement. The testimony indicates appellant made the
statement in response to an angry question from his wife, and the witness said appellant
made the statement “flippantly [and] offhandedly.” The witness later agreed the statement
was made sarcastically. The trial court sustained appellant’s objection to the statement 
and instructed the jury to disregard it, but denied appellant’s request for a mistrial. 
          We review a trial court's denial of a mistrial under an abuse of discretion standard. 
Ladd v. State, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999). See also Archie v. State, 221
S.W.3d 695, 699-700 (Tex.Crim.App. 2007). Mistrial is a device used to halt trial
proceedings when the error is so prejudicial that expenditure of further time and expense
would be wasteful and futile. Ladd, 3 S.W.3d at 567. To determine whether a given error
necessitates a mistrial, we must examine the particular facts of the case. Id. A mistrial is
only required when the impropriety is clearly calculated to inflame the minds of the jury and
is of such a character as to suggest the impossibility of withdrawing the impression
produced on the minds of the jury. Hinojosa v. State, 4 S.W.3d 240, 253 (Tex.Crim.App.
1999). See also Hawkins v. State, 135 S.W.3d 72, 77 (Tex.Crim.App. 2004) (only in
extreme circumstances, where the prejudice is incurable, will a mistrial be required). 
          When the trial court instructs a jury to disregard, we presume the jury follows the
trial court’s instructions. Waldo v. State, 746 S.W.2d 750, 753 (Tex.Crim.App. 1988). See
also Drake v. State, 123 S.W.3d 596, 604 (Tex.App.–Houson [14th Dist.] 2003, pet. ref’d),
citing Ladd, 3 S.W.3d at 567 as quoting Gardner v. State, 730 S.W.2d 675, 696
(Tex.Crim.App. 1987) (en banc). In determining the efficacy of curative instructions, we
may consider the following factors: (1) the nature of the error; (2) the persistence of the
prosecution in committing the error; (3) the flagrancy of the violation; (4) the particular
instruction given; (5) the weight of incriminating evidence; and (6) the harm to the accused
as measured by severity of the sentence. Waldo, 746 S.W.2d at 754. 
          The statement of which appellant complains here was vague and not solicited by
the State. Testimony was clear that the statement was made sarcastically or, as the
witness said, “flippantly.” The context in which the statement was made should have been
clear to the jury. The State did not dwell on the statement, and the incident involving
“Andrea” was not mentioned again during the guilt-innocence phase of trial. The court did
not abuse its discretion by denying the mistrial. 
                     We overrule appellant’s third issue on appeal.
Factual Sufficiency of Evidence
          In appellant’s last issue, he requests that we review the record to insure that the
evidence appellant intentionally and knowingly caused his mouth to contact the boy’s penis
meets the standard of factual sufficiency. We have done so, and overrule the point of
error.  Appellant’s written statement to the sheriff’s office investigator admitted to contact
between his mouth and the boy’s penis, under circumstances by which the jury could infer
that the contact was intentional or knowing. The boy’s statements to his mother, his
stepfather, his grandmother and the interviewer certainly reflect intentional or knowing
contact. The jury viewed the video of the boy’s interview.
          During his trial testimony, the boy, then six years old, frequently was non-responsive. When asked about what happened the night he went to spend the night with
Paw Paw, he stated, “I don’t remember that, too.” He also repeatedly stated “I don’t know”
when asked about the events of that day and his interview at the Children’s Advocacy
Center. The boy acknowledged he did not want Paw Paw to get into trouble. When the
prosecutor asked, “what did [Paw Paw] do to your pee-pee?”, the boy responded “A long
time ago.” On further questioning, he acknowledged that appellant pulled his pants down. 
He denied that appellant touched or licked his “pee-pee,” but agreed that whatever
happened scared him and made him nervous. He also acknowledged that he told his
mother about it and told her “[t]he truth.” He stated on the stand, however, that he did not
“know” that or “remember it.” 
          The jury was free to reject appellant’s witness-stand explanation of the events and
his contention other witnesses were lying, and believe instead that appellant told the truth
to the investigator. The jury also reasonably could have believed the boy told the
interviewer the truth despite his initial reluctance to discuss the events, and reasonably
could have found the boy’s repeated and consistent descriptions of appellant’s actions,
given shortly after the events, more believable than his testimony at trial. The evidence
supporting appellant’s conviction was not “too weak” to support the jury’s verdict nor,
considering the contrary evidence, was the verdict against the great weight and
preponderance of the evidence. See Laster v. State, 275 S.W.3d 512, 518 (Tex.Crim.App.
2009); Watson v. State, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006) (both setting forth
the standard for factual sufficiency). 
          Accordingly, we overrule appellant’s last point of error and affirm the trial court’s
judgment.
                                                                          James T. Campbell

                                                                                     Justice



Do not publish.