**Opinion issued December 3, 2015**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-15-00359-CR

—————————————

**HESIQUIO CANTU, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 35th District Court**
**Mills County, Texas[1]**
**Trial Court Case No. 2981**

---

---

[1] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Third District of Texas. Misc. Docket No. 15-9054 (Tex. Mar. 24, 2015); *see also* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2013) (authorizing transfer of cases). Nothing in our review indicates the outcome of this case would vary depending on the precedent of either the Austin Court of Appeals or this Court. *See* TEX. R. APP. P. 41.3 (requiring reviewing court to "decide the case in accordance with the precedent of the transferor court" and permitting reviewing courts to address whether outcome would be different under precedent of reviewing court).

## MEMORANDUM OPINION

The State charged Hesiquio Cantu by indictment with assault family violence, occlusion.[2] Appellant pleaded not guilty. The jury found him guilty, and the trial court assessed punishment at six years' confinement. In one issue on appeal, Appellant argues the trial court abused its discretion by denying his request to admit an exhibit.

We affirm.

## Background

Deputy J. Purcell, a deputy with the Mills County Sheriff's Department, received a call for a domestic disturbance on December 25, 2013. When he arrived at the house, he found Helen Pacheco. Pacheco's left eye had a large, swollen, purple bruise. She had bite marks above the eye and blood coming out of the corner of her eye. Red marks were on her neck, consistent with having been choked. Pacheco told the deputy that Appellant had assaulted her.

Appellant was asleep on the bed. Deputy Purcell handcuffed him and woke him up. Blood was found on Appellant's hand, mouth, teeth, nose, forehead, and shirt. Deputy Purcell later testified that Appellant did not have many injuries that could cause bleeding and that the blood appeared to be transferred blood, meaning the blood was from a different source.

---

[2] *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(B) (Vernon Supp. 2015); TEX. FAM. CODE ANN. § 71.0021(b) (Vernon Supp. 2015).

A paramedic arrived. Pacheco was coughing at the time the paramedic arrived. The paramedic determined that Pacheco's swollen eye needed to be examined at the hospital to determine if there was damage. At the hospital, the examining doctor noted in his review that Pacheco did not have any trouble breathing.

The State charged Appellant with assault family violence, occlusion. At trial, Appellant and Pacheco gave varying accounts of how Pacheco became injured. Appellant's description of events was that he fell asleep first, then Pacheco started hitting him in his right eye. He woke up, and then Pacheco "was on [him] like a wildcat." He raised his arm to defend himself and hit her in the eye with his elbow. Appellant said this was the only time he hit her. After Appellant hit her in the eye, Pacheco stopped her attack. Appellant laid back down, and then Pacheco resumed attacking him. While trying to defend himself, "maybe I grabbed her from the neck. I don't know." Eventually, Pacheco tired, and they both laid down. Appellant went back to sleep. Appellant acknowledged that pictures of Pacheco showed bite marks on her face. While he could not remember ever biting her, he acknowledged that it must have been him that bit her. He claimed, however, that he would have remembered punching or choking her.

In contrast, Pacheco testified that, at a certain point in the evening, she decided to go to bed. As she was walking to the bedroom, she noticed Appellant

following her.  She got into bed.  Appellant stood by her side of the bed as he began to undress, then he suddenly punched her in the eye.  Appellant got on top of her, and she tried to get him off of her.  He grabbed one of her arms, pinned the other under one of his knees, and choked her with his free hand.  Pacheco struggled to breathe but was unable to do so.  She began to gurgle, Appellant removed his hand from her neck momentarily, she began coughing, and then Appellant started choking her again.  Appellant leaned in and whispered into her ear that he was going to kill her.  He then bit her above her eye.  He bit hard enough that doctors later determined that his teeth must have met within her skin.  All of a sudden, Appellant stopped choking her, moved off of her, laid down, and fell asleep.

During trial, Appellant sought to admit into the record one page of a business record the State had filed within the court before trial.  The business records included certain records of the hospital where Pacheco had been treated for her injuries following the incident.  Appellant sought to have one page of a three-page report admitted.  Styled "Physician Documentation," Appellant sought to introduce the exhibit to show that, at the hospital, "the patient does not display signs of respiratory distress, Respirations: normal, Breath sounds: are normal."  At the bench hearing on the matter, the State offered to withdraw its objections if Appellant agreed to have all three pages of the report admitted.  Appellant did not agree to that.  Appellant argued that the report contained Pacheco's description of

4

the events leading to her injuries. Appellant argued that these statements were hearsay and should not be included. The trial court told Appellant it would only allow the entire document, without redactions, to be admitted. "That's the way I see it. Under the Rule of Optional Completeness, I think they're entitled to put it all in. We're just not going to start redacting. You don't want him redacting, you don't want her to redact, so —."

## Admissibility of Evidence

In his sole issue, Appellant argues the trial court abused its discretion by denying his request to admit one page of a report from Pacheco's hospitalization.

### A. Standard of Review

We review a trial court's ruling on the admission or exclusion of evidence for abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Sandoval v. State*, 409 S.W.3d 259, 281 (Tex. App.—Austin 2013, no pet.).[3] A trial court abuses its discretion by excluding evidence only if its decision "lies outside the zone of reasonable disagreement." *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012). We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's decision if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009); *Sandoval*, 409 S.W.3d at 281. If

---

[3]     *See also Cowan v. State*, 03-13-00301-CR, 2015 WL 4197594, at *3 (Tex. App.—Austin July 9, 2015, no pet.).

the trial court's evidentiary ruling is reasonably supported by the record and correct on any theory of law applicable to that ruling, we will uphold the decision. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005); *Sandoval*, 409 S.W.3d at 297.

## B.    Analysis

Before trial, the State filed with the trial court certain business records of the hospital where Pacheco had been treated for her injuries following the incident. At trial, Appellant sought to admit into the record one page of a three-page report contained within the business records. Styled "Physician Documentation," Appellant sought to introduce the exhibit to show that, at the hospital, "the patient does not display signs of respiratory distress, Respirations: normal, Breath sounds: are normal." Appellant asserts that this documentation would have been relevant to his defensive theory that Pacheco initiated the attack and that he did not choke Pacheco.[4]

At the bench hearing on the matter, the State offered to withdraw its objections if Appellant agreed to have all three pages of the report admitted. Appellant did not agree to that. Appellant argued that the report contained Pacheco's description of the events leading to her injuries. Appellant argued that these statements were hearsay and should not be included. The trial court told

---

[4]    Proof that Appellant choked Pacheco elevated the offense from a Class A misdemeanor to a third-degree felony. *See* PENAL § 22.01(b)(2).

6

Appellant he would only allow the entire document, without redactions, to be admitted.

Appellant complains on appeal that the trial court's ruling was erroneous and that he should have been allowed to present to the jury only the single, redacted page from the three-page report. We do not need to determine whether the trial court's ruling was erroneous because, even assuming the ruling was erroneous, the exclusion was harmless.

Error based on a violation of the rules of evidence is non-constitutional error. *Kirby v. State*, 208 S.W.3d 568, 574 (Tex. App.—Austin 2006, no pet.) (citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). For non-constitutional error, any "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). "In considering the potential to harm, the focus is not on whether the outcome of the trial was proper despite the error, but whether the error had a substantial or injurious effect or influence on the jury's verdict." *Barshaw v. State*, 342 S.W.3d 91, 93–94 (Tex. Crim. App. 2011). We review the record as a whole and reverse only if we have "grave doubt that the result of the trial was free from the substantial effect of the error. 'Grave doubt' means that 'in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the

7

error.'" *Id.* (quoting *Burnett v. State*, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002)).

Based upon the record as a whole, we hold that the error was harmless for two reasons. First, while Appellant claims the notation in the report establishes that Pacheco did not have any breathing problems at the hospital, this fact is not necessarily probative of whether Appellant choked her earlier that night. Thus, the evidentiary value of the notation is slight, particularly given the evidence that coughing is a common response to choking immediately after the incident and that Pacheco was coughing when the paramedic arrived. In short, any influence the notation could have had on the jury would only have been slight. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (holding substantial rights are not affected if error would have had only slight effect).

Second, there was ample evidence in the record that Pacheco's injuries were the result of an assault by Appellant, not by Appellant acting in self-defense from an assault by Pacheco. Appellant's description of events was that he fell asleep first and that Pacheco started hitting him in his right eye. He woke up, and then Pacheco "was on [him] like a wildcat." He raised his arm to defend himself and hit her in the eye with his elbow. Appellant said this was the only time he hit her. After Appellant hit her in the eye, Pacheco stopped her attack. Appellant laid back down, and then Pacheco resumed attacking him. While trying to defend himself,

8

"maybe I grabbed her from the neck. I don't know." Eventually, Pacheco tired, and they both laid down. Appellant went back to sleep. Appellant acknowledged that pictures of Pacheco showed bite marks on her face. While he could not remember ever biting her, he acknowledged that it must have been him that bit her. He claimed, however, that he would have remembered punching or choking her.

In contrast, Pacheco testified that, at a certain point in the evening, she decided to go to bed. As she was walking to the bedroom, she noticed Appellant following her. She got into bed. Appellant stood by her side of the bed as he began to undress, then he suddenly punched her in the eye. Appellant got on top of her, and she tried to get him off of her. He grabbed one of her arms, pinned the other under one of his knees, and choked her with his free hand. Pacheco struggled to breathe but was unable to do so. She began to gurgle, Appellant removed his hand from her neck momentarily, she began coughing, and then Appellant started choking her again. Appellant leaned in and whispered into her ear that he was going to kill her. He then bit her above her eye. He bit hard enough that doctors later determined that his teeth must have met within her skin. All of a sudden, Appellant stopped choking her, moved off of her, laid down, and fell asleep.

The evidence of the struggle supports Pacheco's version of events. Photographs taken when the police arrived showed a large, swollen, purple bruise around Pacheco's left eye. Bite marks were above that eye. A thick line of blood

ran from her black eye. Two witnesses that saw her immediately after the incident testified that she had red marks around her neck consistent with someone being choked. The paramedic testified that Pacheco was coughing.

Blood was found on the sheets. It was pooled in a specific location on Pacheco's side of the bed, consistent with blood flowing from someone remaining in a relatively fixed location on the sheets, not someone moving around over the bed. Likewise, blood was found on Appellant. But given Appellant's few injuries and the pattern of the blood, Deputy Purcell determined the blood appeared to be transferred blood, meaning the blood was from a different source. Blood was found on Appellant's hand, mouth, teeth, nose, forehead, and shirt.

On the whole, the physical and other testimonial evidence supported Pacheco's testimony closer than Appellant's. Proof that Pacheco did not have any trouble breathing when she was later taken to the hospital is relevant, at most, to whether Appellant choked her. As we have held above, the evidence would have only minor relevance for this determination. Furthermore, it does nothing to rebut the remainder of the evidence that he hit her hard enough in the eye to create a large, swollen bruise, bit her above the eye, and caused her to bleed.

We hold the trial court's exclusion of the hospital record relevant to Pacheco's ability to breathe did not affect Appellant's substantial rights. *See Barshaw*, 342 S.W.3d at 93–94 (holding substantial rights not affected unless error

had substantial or injurious effect on jury's verdict). We overrule Appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Higley, Huddle, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).