NO. 07-07-0153-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

APRIL 29, 2009
_____

VIRGLE WATTERSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-413067; HONORABLE JIM BOB DARNELL, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant Virgle Watterson appeals from his jury conviction of aggravated sexual assault of a child and the resulting sentence of life imprisonment. Through four issues, appellant argues the trial court erred by admitting evidence of extraneous offenses, wrongs or bad acts, and by denying a mistrial and that the evidence presented at trial is insufficient to sustain his conviction. We affirm the judgment of the trial court.

## Background

By a June 2006 indictment, appellant was charged with aggravated sexual assault,[1] specifically "intentionally and knowingly caus[ing] the sexual organ of [a child] who was then and there younger than 14 years of age, and not the spouse of the said defendant, to contact the mouth of the said defendant."

The victim of appellant's assault was a five-year-old boy, the grandson of appellant's wife. The boy called appellant "Paw Paw."[2] Appellant and his wife lived only a short distance from the boy and his mother and stepfather. Evidence showed the boy made an outcry statement to his mother after he came home from spending the night with his grandmother and appellant. His mother said he seemed upset, and finally told her that Paw Paw was going to Hell. She tried to dissuade the boy from that idea, but he persisted. When she asked why, the boy said, "Because he licked my pee-pee." She called her husband into the room, and told him of the boy's statement. He talked with the boy, and heard the same thing.[3] They called the boy's grandmother, appellant's wife, to their home. The boy made the same statement to his grandmother. The boy indicated the events happened in appellant's pickup.

---

[1] *See* Tex. Penal Code Ann. § 22.021 (Vernon 2007). An offense under section 22.021 is a first degree felony punishable by imprisonment for life or any term not more than 99 years or less than 5 years and a fine of not more than $10,000. Tex. Penal Code Ann. § 12.32 (Vernon 2003).

[2] The nickname sometimes is spelled "Papa" in the record. We use this spelling because it appears in appellant's written statement admitted at trial.

[3] The boy's stepfather testified that what the boy said was "absolutely" consistent with what his wife told him.

Appellant's wife went back to her home and returned with appellant. In conversation with his wife and the boy's stepfather, appellant denied the accusation. During that conversation, he made the statement, "Fine, I did it. I did it just like I did it to Andrea." The family called authorities. A Lubbock County sheriff's deputy responded, took information from the boy's mother and determined that the boy was not in further danger.

A few days later, a sheriff's department investigator accompanied the boy and his mother to the Children's Advocacy Center for an interview. He observed the interview, and testified the boy's statement to the interviewer was consistent with the boy's mother's statement to the investigator about the offense.

When the investigator returned to his office, he found that appellant had left phone messages to the effect that "he needed to talk to [the investigator.] He needed help." The investigator returned appellant's calls, and made an appointment with appellant, who came to the sheriff's office that day. He signed and swore to a typewritten statement the investigator prepared during their conversation.[4] The statement contained this account of the events that occurred in appellant's pickup as he drove the boy to appellant's home to spend the night:

> "I put [the boy] on my lap and was letting him steer the truck. . . . [The boy] stopped steering and grabbed his penis. I told him to quit[e] grabbing that thing or Paw Paw was going to bite it off. He grabbed it one more time. I took [the boy] off my lap and set him in the middle of the bench seat beside me. I pulled his shorts down. I pulled his underwear down with his shorts.

---

[4] Warnings on the written statement, initialed by appellant, track those set forth in § 2 of article 38.22 of the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (Vernon 2005).

3

I bent over and put my mouth on his penis. Then I thought to myself, 'Oh my god, what am I doing.' I raised up and apologized to [the boy.] I told him Paw Paw was sorry. I told him that this is what bad people do, not Paw Paw. I told him that Paw Paw was going to go to Hell."

"I went ahead and drove the rest of the way home. We were just a few hundred feet from home, so it didn't take long. I would never hurt my grandson. I love my grandson very much. It only happened for a second or so. But long enough and it never should have happened. I need help. The bourbon I had drank and the demons I have been fighting. All of this is what caused it to happen."

Appellant testified at trial. He there maintained the incident was an accident during horseplay between him and the boy. He testified he moved the boy to the middle of the pickup's bench seat next to him and "raised up his shirt" and "went down to blow on his belly" but the boy "pushed away" from appellant, laughing. When that happened, appellant said, his chin may accidentally have come into contact with the boy's penis. He said the boy's shorts and underwear had "come down" when the boy moved across the vehicle's seat. Appellant admitted he had told differing versions of the events. He testified also that the emotions reflected in his written statement were a result of his fear because "they're trying to throw me in prison." By the conclusion of his testimony, appellant had claimed that the sheriff's department investigator, the boy's mother and stepfather, and the Children's Advocacy Center interviewer all were lying, and that the boy was coerced into telling the interviewer that appellant "licked his pee-pee."

The jury found appellant guilty as charged in the indictment and assessed punishment at imprisonment for life. Appellant was sentenced accordingly and this appeal followed.

4

Analysis

*Admission of Evidence of Extraneous Offenses*

The opening paragraph of the narrative in the written statement appellant signed in the sheriff's office read as follows:

> When I was about seven years old, I walked in on my mother having sex with my father's best friend while she was still married to my father. Then when I got to my early teens, I was raped in the bathroom shower at my school by another boy. Then when I turned 17, my father took me to a whore house, but they turned me down because I was too young. That's when my father took me to my mother and my dad talked her into having sex with me. She never did anything to stop it. I told Investigator Stevens this to explain what happened with my grandson . . . .

When the State offered the statement into evidence, appellant objected to admission of that opening paragraph under Rules of Evidence 401, 402, 403 and 404(b). The trial court overruled his objections. In his first two issues, appellant contends admission of the paragraph was error because it had no relevance apart from impermissible character conformity, and because its prejudicial nature substantially outweighed any possible probative value. We disagree, and overrule the points of error.

Under Rule 401, evidence is relevant if it makes the existence of a fact that is of consequence to the determination of the action more probable than it would be without the evidence. Tex. R. Evid. 401; *Moses v. State,* 105 S.W.3d 622, 625 (Tex.Crim.App. 2003). Under Rule 402, there is a presumption of admissibility of relevant evidence. Tex. R. Evid.

5

402; *Moses,* 105 S.W.3d at 625.  Under Rule 404(b), evidence of other crimes, wrongs, or acts is inadmissible to prove a person's character for the purpose of showing action in conformity therewith.  Tex. R. Evid. 404(b); *Montgomery v. State,* 810 S.W.2d 372, 387-88 (Tex.Crim.App. 1991) (op. on reh'g).  *See also Casey v. State,* 215 S.W.3d 870, 879 (Tex.Crim.App. 2007), *citing Johnston v. State,* 145 S.W.3d 215, 220 (Tex.Crim.App. 2004).  One proper purpose under Rule 404(b) for admission of relevant extraneous conduct evidence is to rebut a defensive theory.  *Powell v. State*, 63 S.W.3d 435, 438 (Tex.Crim.App. 2001); *Ransom v. State*, 920 S.W.2d 288, 301 (Tex.Crim.App. 1994) (op. on reh'g). The trial court's decision whether to admit evidence under Rule 404(b) will be upheld on appeal absent an abuse of discretion.  *Montgomery*, 810 S.W.2d at 391. Thus, we will not intercede as long as the trial court's ruling was at least within the zone of reasonable disagreement.  *Id*.

Extraneous offense evidence is admissible if it rebuts a defensive theory by showing, for example, absence of mistake or accident.  *Montgomery,* 810 S.W.2d at 387-88.  The contention that his contact with the boy's penis was accidental was a central part of appellant's defense.  During counsel's opening statement he told the jury he expected the evidence to show that appellant did not intentionally or knowingly contact the boy's penis.  Likewise, appellant testified that any contact he had with the penis was accidental. He told the jury at one point, "[m]y chin may have touched it . . . maybe with my chin.  But it was an accident.  I did not lick it."  This theory was re-urged in counsel's closing argument.  The trial court reasonably could have determined that the contents of the objected-to paragraph of appellant's written statement had relevance beyond mere

6

character conformity. Evidence that appellant had been subjected to unusual sexual events in his youth and that he related those events to the alleged sexual assault of the victim here tends to rebut a contention that any contact with the child's penis was simply an accident.[5]

Appellant relies on *Kirby v. State,* 208 S.W.3d 568 (Tex.App.–Austin 2006, no pet.) to support his position that the extraneous conduct evidence admitted at trial was error. There, the court held that appellant's history as the victim of sexual abuse was improper character evidence under Rule 404(b). *Id*. at 572. In *Kirby*, the State elicited testimony from a detective regarding the defendant's history of sexual abuse for the purpose of showing that because appellant was a victim of past sexual abuse, she was more likely to have committed the offense charged. *Id.*

Two factors distinguish the case at bar from *Kirby*. Unlike the evidence in that case, here the evidence was provided through appellant's own statements made in the course of his admittedly voluntary written statement to a law enforcement officer. And, significantly, the court in *Kirby* noted that the State did not make the argument we have accepted, that the evidence was relevant to rebut a defensive issue. *Kirby,* 208 S.W.3d at 573 n.6. *Kirby* does not assist appellant.

---

[5] Similarly, the evidence reasonably may be said to have relevance to the culpable mental state with which appellant acted. *See* Tex. Penal Code Ann. § 6.03(b) (Vernon 2003) (providing that a person acts knowingly when he is aware of the nature of his conduct).

Appellant also advanced an objection to the evidence under Rule 403, which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. We apply the abuse of discretion standard when analyzing the trial court's decision to admit evidence over a Rule 403 objection. *Montgomery,* 810 S.W.2d at 391. A trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. *Casey v. State,* 215 S.W.3d 870, 880 (Tex.Crim.App. 2007); *Wheeler v. State,* 67 S.W.3d 879, 888 (Tex.Crim.App. 2002).

Rule 403 did not require exclusion of the challenged paragraph of appellant's statement. In the context of appellant's statement to the investigator, we find the contents of the paragraph strongly probative of the fact his improper contact with the child was a conscious and knowing act and not an "accident." Of the three events mentioned in the paragraph, only the last, involving appellant's sexual contact with his mother, carried any great risk of distracting the jury from the issues being tried. The evidence took no additional time to develop initially, and was mentioned again during the trial only when appellant took the stand and denied making some of the statements the investigator

8

recorded.[6]  Although it does not appear the State had great need for admission of the challenged paragraph, considering all of the factors, we find no abuse of discretion in the trial court's overruling of appellant's Rule 403 objection.  The trial court instructed the jury concerning the limited purposes for which extraneous offense evidence was admitted.

We overrule appellant's first two issues on appeal.

*Denial of Mistrial*

In appellant's third issue, he contends the trial court erred when it denied his request for a mistrial.  As noted, during a confrontational conversation among appellant, his wife and the boy's stepfather, appellant made the statement, "Fine, I did it.  I did it just like I did it to Andrea."  The statement was revealed to the jury during the State's examination of the boy's stepfather, in his answer to a question asking about appellant's response to the boy's outcry statement.  The testimony indicates appellant made the statement in response to an angry question from his wife, and the witness said appellant made the statement "flippantly [and] offhandedly."  The witness later agreed the statement was made sarcastically.  The trial court sustained appellant's objection to the statement and instructed the jury to disregard it, but denied appellant's request for a mistrial.

We review a trial court's denial of a mistrial under an abuse of discretion standard.  *Ladd v. State,* 3 S.W.3d 547, 567 (Tex.Crim.App. 1999).  *See also Archie v. State,* 221 S.W.3d 695, 699-700 (Tex.Crim.App. 2007).  Mistrial is a device used to halt trial

---

[6] The statement he had sex with his mother was one of the statements appellant denied.

proceedings when the error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Ladd,* 3 S.W.3d at 567. To determine whether a given error necessitates a mistrial, we must examine the particular facts of the case. *Id. A* mistrial is only required when the impropriety is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury. *Hinojosa v. State,* 4 S.W.3d 240, 253 (Tex.Crim.App. 1999). *See also Hawkins v. State,* 135 S.W.3d 72, 77 (Tex.Crim.App. 2004) (only in extreme circumstances, where the prejudice is incurable, will a mistrial be required).

When the trial court instructs a jury to disregard, we presume the jury follows the trial court's instructions. *Waldo v. State,* 746 S.W.2d 750, 753 (Tex.Crim.App. 1988). *See also Drake v. State,* 123 S.W.3d 596, 604 (Tex.App.–Houson [14th Dist.] 2003, pet. ref'd), *citing Ladd,* 3 S.W.3d at 567 as *quoting Gardner v. State,* 730 S.W.2d 675, 696 (Tex.Crim.App. 1987) (en banc). In determining the efficacy of curative instructions, we may consider the following factors: (1) the nature of the error; (2) the persistence of the prosecution in committing the error; (3) the flagrancy of the violation; (4) the particular instruction given; (5) the weight of incriminating evidence; and (6) the harm to the accused as measured by severity of the sentence. *Waldo,* 746 S.W.2d at 754.

The statement of which appellant complains here was vague and not solicited by the State. Testimony was clear that the statement was made sarcastically or, as the witness said, "flippantly." The context in which the statement was made should have been clear to the jury. The State did not dwell on the statement, and the incident involving

10

"Andrea" was not mentioned again during the guilt-innocence phase of trial. The court did not abuse its discretion by denying the mistrial.

We overrule appellant's third issue on appeal.

*Factual Sufficiency of Evidence*

In appellant's last issue, he requests that we review the record to insure that the evidence appellant intentionally and knowingly caused his mouth to contact the boy's penis meets the standard of factual sufficiency. We have done so, and overrule the point of error.

Appellant's written statement to the sheriff's office investigator admitted to contact between his mouth and the boy's penis, under circumstances by which the jury could infer that the contact was intentional or knowing. The boy's statements to his mother, his stepfather, his grandmother and the interviewer certainly reflect intentional or knowing contact. The jury viewed the video of the boy's interview.

During his trial testimony, the boy, then six years old, frequently was non-responsive. When asked about what happened the night he went to spend the night with Paw Paw, he stated, "I don't remember that, too." He also repeatedly stated "I don't know" when asked about the events of that day and his interview at the Children's Advocacy Center. The boy acknowledged he did not want Paw Paw to get into trouble. When the prosecutor asked, "what did [Paw Paw] do to your pee-pee?", the boy responded "A long time ago." On further questioning, he acknowledged that appellant pulled his pants down.

11

He denied that appellant touched or licked his "pee-pee," but agreed that whatever happened scared him and made him nervous. He also acknowledged that he told his mother about it and told her "[t]he truth." He stated on the stand, however, that he did not "know" that or "remember it."

The jury was free to reject appellant's witness-stand explanation of the events and his contention other witnesses were lying, and believe instead that appellant told the truth to the investigator. The jury also reasonably could have believed the boy told the interviewer the truth despite his initial reluctance to discuss the events, and reasonably could have found the boy's repeated and consistent descriptions of appellant's actions, given shortly after the events, more believable than his testimony at trial. The evidence supporting appellant's conviction was not "too weak" to support the jury's verdict nor, considering the contrary evidence, was the verdict against the great weight and preponderance of the evidence. *See Laster v. State,* 275 S.W.3d 512, 518 (Tex.Crim.App. 2009)*; Watson v. State*, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006) (both setting forth the standard for factual sufficiency).

Accordingly, we overrule appellant's last point of error and affirm the trial court's judgment.

James T. Campbell
Justice

Do not publish.

12