# NO. 12-11-00250-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MICHAEL ODELL LOMAX,*<br>*APPELLANT* | § | *APPEAL FROM THE THIRD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Michael Odell Lomax appeals his conviction for intentionally or knowingly causing an injury to a child, a first degree felony as alleged. In three issues, Appellant challenges the sufficiency of the evidence, the efficacy of his trial counsel, and the admission of an expert opinion regarding his future dangerousness. We affirm.

### BACKGROUND

Appellant and his wife, M.L., are the parents of a son, N.L. When N.L. was twenty-six days old, M.L. left him alone with Appellant while she travelled to Walgreen's to purchase some cereal for N.L. According to Appellant, while M.L. was gone, Appellant changed N.L.'s diaper and then left N.L. on the changing table to get him some formula. Appellant returned to the changing table with N.L.'s formula and a blanket in one hand. He then attempted to use his other hand to lift N.L., but dropped him. N.L. fell several feet and landed on the concrete floor. When Appellant picked up N.L. after the fall, N.L.'s arm was clearly broken. Appellant called M.L., who by then was almost home from Walgreen's. When M.L. arrived, she and Appellant took N.L. to the Palestine Regional Medical Center (Palestine Regional).

At Palestine Regional, Appellant told the medical staff that N.L. had rolled off the changing table on his own. Not believing that such a young child could roll over, the medical staff contacted the Anderson County Sheriff's Office (ACSO) and Child Protective Services (CPS). Appellant initially gave the investigators from the ACSO the same version of the incident—that N.L. had rolled over on his own and fallen off the changing table. Later, Appellant told ACSO investigators that he attempted to pick N.L. up with one hand and dropped him.

Meanwhile, N.L. was receiving medical attention. The doctor at Palestine Regional soon realized that N.L. had sustained more than a broken arm. He also had a broken leg and bleeding around his brain. The doctor determined that N.L.'s condition was critical enough that he needed to be air lifted to Children's Medical Center in Dallas (Children's).

Appellant and M.L. were not allowed to ride with N.L. to Dallas. Instead, they were interviewed by CPS investigator Larry Reeves. At the conclusion of the interview, Appellant and M.L. returned to their home. M.L. gathered clothes and left to go to Children's. Appellant told M.L. that he was taking his truck to Dallas and would be there later. At some point before he left for Dallas, Appellant, who was on probation for theft, left a message with his probation officer, Amy Wiginton. Afterwards, he slept for a few hours, and then traveled to Dallas.

Once N.L. arrived at Children's, the doctors diagnosed more injuries – a fractured right collarbone, a fractured rib, and a few chip fractures. Dr. Matthew Cox is a physician with Children's who has received training specific to recognizing child abuse and neglect. When N.L. was admitted to Children's, Dr. Cox was consulted to perform an evaluation to determine whether N.L.'s injuries were explained by Appellant's version of the incident. He immediately identified several problems with Appellant's story. Dr. Cox opined that babies are top-heavy, and a baby who is accidentally dropped generally sustains an injury to the head. Dr. Cox also noted that N.L. suffered several distinct injuries to different areas of his body. He believed that if N.L. had been accidentally dropped, he probably would have an injury to only one part of his body. Dr. Cox stated further that the breaks to N.L.'s arm and leg required a high level of force and a bending type of force that a fall from a few feet would not provide. Finally, Dr. Cox believed that N.L. experienced three or four different types of forces to sustain the fracture pattern that he incurred. Thus, Dr. Cox believed that Appellant's version of the incident was not a possible explanation for N.L.'s injuries.

2

Similarly, the law enforcement officers did not believe Appellant's version of the incident. When Appellant and M.L. returned to Palestine from Dallas, they went to the ACSO to discuss the incident. Appellant gave a videotaped statement in which he continued to assert that he had accidentally dropped N.L. The ACSO deputies remained unconvinced and arrested Appellant. Appellant was charged with two counts of causing injury to a child. Under the first count, the State alleged that Appellant caused the injury intentionally or knowingly, and under the second count, the State alleged that Appellant caused the injury recklessly. The case proceeded to trial, and the jury found Appellant guilty of intentionally or knowingly causing injury to a child. The jury then assessed Appellant's punishment at imprisonment for twenty-seven years and six months. This appeal followed.

## SUFFICIENCY OF EVIDENCE

In his first issue, Appellant argues that the evidence is legally insufficient to support the finding that Appellant intentionally or knowingly injured his son.

### Standard of Review and Applicable Law

Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality opinion). When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *Brooks*, 323 S.W.3d at 899. Under this standard, a reviewing court does not sit as a thirteenth juror and may not substitute its judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *See Brooks*, 323 S.W.3d at 899; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, a reviewing court defers to the fact finder's resolution of conflicting evidence unless that resolution is not rational in light of the burden of proof. *See Brooks*, 323 S.W.3d at 899-900. The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). A successful legal sufficiency challenge will result in rendition of an

3

acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

Every fact does not need to point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing guilt and may alone be sufficient to establish guilt. *Id*.

As applicable to these facts, to support Appellant's conviction for intentionally or knowingly causing injury to a child, the State was required to prove that Appellant intentionally or knowingly caused N.L. serious bodily injury. *See* TEX. PENAL CODE ANN. § 22.04(a)(1), (e) (West 2011 & Supp. 2012). A person acts intentionally with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE ANN. § 6.03(a) (West 2011). A person acts knowingly with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. TEX. PENAL CODE ANN. § 6.03(b) (West 2011). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id*. "Bodily injury" means "physical pain, illness, or any impairment of physical condition." *See* TEX. PENAL CODE ANN. § 1.07(a)(8) (West 2011). "Serious bodily injury" is defined as "bodily injury that creates substantial risk of death, or that causes death, serious permanent disfigurement or protracted loss or impairment." *Id.* § 1.07(a)(46) (West 2011).

**Discussion**

There is ample circumstantial evidence that Appellant intentionally or knowingly caused N.L.'s injuries. According to Appellant's own testimony, Appellant was alone with N.L. when he

4

was injured. N.L. was uninjured when M.L. left the house to go to Walgreen's. Before she returned, N.L. suffered a broken arm, a broken leg, a fractured collarbone, a fractured rib, several chip fractures, and bleeding around the brain. Appellant admitted that he caused those injuries to N.L., and there is no dispute that these injuries are serious bodily injuries, but he claimed that the injuries were caused by his accidentally dropping N.L. However, Appellant's explanation that he dropped N.L. does not explain the number of injuries sustained by N.L. or the force required to sustain the broken arm and broken leg.

At trial, Dr. Cox testified that N.L.'s multiple injuries had to be caused by different forces. He stated that Appellant would not have caused all of the injuries to N.L. if he had simply dropped him, but instead must have done multiple, different things to N.L. for N.L. to sustain all of his injuries. Dr. Cox also testified that both the broken arm and broken leg were extremely high force, bending or twisting type of injuries, and not the type of injuries that would be sustained in a fall. Dr. Cox further testified that someone inflicting these injuries on N.L. did so intentionally. To cause these injuries, according to Dr. Cox, someone had to either physically bend N.L.'s arm and leg until they snapped or strike N.L.'s arm and leg with a hard object.

Several other witnesses agreed with Dr. Cox. Dr. Richard Wagnor of Palestine Regional testified that N.L.'s injuries did not occur as Appellant claimed. He further opined that someone intentionally inflicted N.L.'s injuries. Reeves, the CPS investigator, likewise testified that a fall as described by Appellant would not cause a broken arm and a broken leg in a child as young as N.L. Investigator Reeves believed that N.L.'s injuries were caused intentionally. Similarly, Wendell Wilcher, an investigator with the ACSO, testified that N.L.'s injuries had been caused intentionally.

Additionally, Appellant initially claimed that N.L. had rolled off the changing table on his own. He later stated that he had accidentally dropped N.L. The jury, in assessing Appellant's credibility, could consider that he gave two different versions of what happened. *See Brooks*, 323 S.W.3d at 899 (stating that jury assesses credibility and weighs evidence). Finally, Appellant called his probation officer shortly after the incident occurred. He then slept for a few hours before driving to Dallas to check on his son's condition. Several witnesses testified that Appellant's actions were strange for a parent whose child had such significant injuries.

The above evidence supports the jury's finding that Appellant intentionally or knowingly

injured N.L.   However, Appellant testified that he accidentally dropped N.L.   He also presented several witnesses who testified that it would be out of character for Appellant to intentionally or knowingly injure his son, and thus, it must have been an accident.   Thus, the jury could have disagreed with the State's theory and determined that N.L.'s injuries were caused by Appellant accidentally dropping N.L.   But, the jury necessarily rejected this other possibility.   The decision to believe that Appellant intentionally or knowingly injured his son was a reasonable one under the facts of this case, and we give great deference to the jury's resolution of the conflicts in the evidence.   *See Johnson v. State*, 23 S.W.3d 1, 14 (Tex. Crim. App. 2000).   We hold that the evidence is sufficient to support the jury's finding that Appellant intentionally or knowingly injured N.L.   Accordingly, Appellant's first issue is overruled.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Appellant alleges that he received ineffective assistance of counsel. Specifically, Appellant argues that his trial counsel was ineffective for his failure to object to (1) Probation Officer Amy Wiginton's testimony that, two weeks prior to the incident at hand, Appellant engaged her in a brief philosophical discussion of whether babies went to heaven, (2) a fifteen-year-old psychiatric evaluation of Appellant, and (3) CPS documents related to an investigation into an allegation that Appellant sexually assaulted a family member when Appellant was thirteen years old.

## Applicable Law

Claims of ineffective assistance of counsel are evaluated under the two step analysis articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The first step requires the appellant to demonstrate that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.   *See Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065.   To satisfy this step, the appellant must identify the acts or omissions of counsel alleged to be ineffective assistance and affirmatively prove that they fell below the professional norm of reasonableness.   *See McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).   The reviewing court will not find ineffectiveness by isolating any portion of trial counsel's representation, but will judge the claim based on the totality of the representation.   *See Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069.

6

To satisfy the **Strickland** standard, the appellant is also required to show prejudice from the deficient performance of his attorney. *See **Hernandez v. State***, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999). To establish prejudice, an appellant must prove that but for counsel's deficient performance, the result of the proceeding would have been different. *See **Strickland***, 466 U.S. at 694, 104 S. Ct. at 2068.

In any case considering the issue of ineffective assistance of counsel, we begin with the strong presumption that counsel was effective. *See **Jackson v. State***, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). We must presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See **id***. Appellant has the burden of rebutting this presumption by presenting evidence illustrating why his trial counsel did what he did. *See **id***. Appellant cannot meet this burden if the record does not affirmatively support the claim. *See **Garza v. State***, 213 S.W.3d 338, 347-48 (Tex. Crim. App. 2007) (where appellant argued ineffective assistance because trial counsel failed to offer any mitigating evidence during punishment phase of trial, without record indicating reasons for a trial counsel's actions or intentions, court presumed trial counsel had reasonable trial strategy); ***Jackson v. State***, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (inadequate record on direct appeal to evaluate whether trial counsel provided ineffective assistance); ***Phetvongkham v. State***, 841 S.W.2d 928, 932 (Tex. App.—Corpus Christi 1992, pet. ref'd, untimely filed) (inadequate record to evaluate ineffective assistance claim); *see also **Beck v. State***, 976 S.W.2d 265, 266 (Tex. App.—Amarillo 1998, pet. ref'd) (inadequate record for ineffective assistance claim, citing numerous other cases with inadequate records to support ineffective assistance claim). A record that specifically focuses on the conduct of trial counsel is necessary for a proper evaluation of an ineffectiveness claim. *See **Kemp v. State***, 892 S.W.2d 112, 115 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

Appellant's burden on appeal is well established. *See **Saenzpardo v. State***, No. 05-03-01518-CR, 2005 WL 941339, at *1 (Tex. App.—Dallas 2005, no pet.) (op., not designated for publication). Before being condemned as unprofessional and incompetent, defense counsel should be given an opportunity to explain his or her actions. *See **Bone v. State***, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). Thus, absent a properly developed record, an ineffective assistance claim must usually be denied as speculative, and, further, such a claim cannot be built upon retrospective speculation. ***Id***. at 835.

7

**Discussion**

Here, Appellant sets forth in his brief that his attorney's performance at trial fell below the professional norm because he failed to object to (1) Probation Officer Wiginton's testimony that Appellant engaged her in a philosophical discussion of whether babies went to heaven, (2) a fifteen-year-old psychiatric evaluation of Appellant, and (3) testimony related to a CPS investigation into an allegation that Appellant sexually assaulted a family member when Appellant was thirteen years old.

As to Probation Officer Wiginton's testimony, Appellant's trial counsel did allow her to testify regarding a philosophical discussion she had with Appellant two weeks prior to the incident in question regarding whether babies go to heaven. However, there are conceivable trial strategies for allowing this testimony. First, the State was attempting to portray Appellant as an uncaring father. This testimony showed that he had concern for his child including his eternal life. Second, Probation Officer Wiginton explained that the discussion began between Appellant and M.L. M.L. had been portrayed by the State as an extremely caring and loving mother. By equating Appellant's level of care to that of M.L.'s, the testimony further strengthened the jury's understanding of his bond with his son. Finally, as Appellant points out, the testimony is not relevant to whether Appellant intentionally or knowingly injured his son. There is no evidence that Appellant intended to take his son's life. Accordingly, his trial counsel could have determined that the risk of the evidence being used improperly was not outweighed by the benefit of showing that Appellant and M.L. had a similar degree of care and concern for their son.

As to the fifteen-year-old psychiatric evaluation of Appellant, when asked if it had any rebuttal evidence, the State responded, "Judge, in lieu of calling an actual witness for rebuttal, I believe there is an agreement to enter the [fifteen-year-old psychiatric evaluation of Appellant]." Appellant's trial counsel confirmed that he had no objection to the admission of the psychiatric evaluation into evidence. Again, it was Appellant's burden to prove his trial counsel was unprofessional. Yet, the record before us is silent about trial counsel's strategy, why he entered into the agreement with the State, or the substance of the agreement. Moreover, we do not know the identity of the witnesses that the State would have called absent the agreement, and we cannot speculate as to the details of the agreement.

Finally, with regard to the CPS documents related to an investigation of the sexual assault

allegation against Appellant, to his credit, Appellant admits that some evidence relating to the allegation that he sexually assaulted a child when he was younger was admissible. Appellant challenges only the admissibility of the CPS documents because he claims those documents contained inadmissible hearsay, violated his constitutional right to confront his accusers, and violated Texas Rule of Evidence 403. Even if we assume the documents were entirely inadmissible, Appellant's trial counsel's failure to object to their admission could have been based on sound trial strategy.

The record shows that Appellant's aunt testified regarding the incident. From her testimony, which Appellant does not contend is inadmissible, the jury learned of the allegations against Appellant. Specifically, Appellant's aunt testified that Appellant "went toward" the young child's genitalia, but she did not believe skin-to-skin contact was made. Appellant's aunt had also given a statement to a CPS investigator, and the notes from that statement were in the CPS documents. In that statement, Appellant's aunt stated that Appellant had kissed the child's genitalia. Thus, when Appellant's aunt testified, the State was permitted to question her, for impeachment purposes, regarding her previous statement to CPS. Appellant's counsel could have determined that it was better to have the documents introduced prior to Appellant's aunt's testimony to reduce the impact of her previous statement.

Also, Appellant's mother testified and confirmed that there was inappropriate sexual behavior between Appellant and the young child. We cannot tell from the record whether Appellant was still considering testifying during the punishment stage of the trial. However, the jury was going to hear Appellant's aunt and mother testify about the incident. Trial counsel reasonably could have decided that it was better not to object to the CPS documents so that the jury was aware of the incident before Appellant testified because Appellant would be cross-examined on the issue. And finally, given that the alleged incident occurred approximately fifteen years prior to the incident in question, we cannot determine from the record whether the CPS investigator was available to testify.

Normally, a silent record cannot defeat the strong presumption of effective assistance of counsel. *See Garza*, 213 S.W.3d at 348; *Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999); *but see Andrews v. State*, 159 S.W.3d 98, 102-03 (Tex. Crim. App. 2005) (reversing conviction "in a rare case" on basis of ineffective assistance of counsel when trial counsel did not

object to misstatement of law by prosecutor during argument).

In *Andrews*, the same prosecutor who filed a motion to cumulate the sentences in four counts of sexual abuse later argued to the jury, "You give him 20 years in each case, it's still just 20 years. It's still not 80. You can give different amounts if you want. You can give 20, 10, 10, five, it's still just 20." *Id*. at 100. The appellant's trial counsel did not object to the prosecutor's misstatement of the law. *Id*. The trial court ultimately granted the State's motion to cumulate the sentences and imposed a combined prison sentence of seventy-eight years. *Id*. The court concluded that the argument left the jury with the incorrect impression that the appellant's sentences could not be stacked and that the appellant would serve no more than twenty years in prison for all four counts. *Id*. at 103. Therefore, the court held that, under the "extremely unusual circumstances of [the] case," the record contained all of the information it needed to conclude that there could be "no reasonable trial strategy for failing to object" to the prosecutor's misstatement of the law. *Id*.

The record in the instant case contains no insight on the basis for counsel's actions, and the "extremely unusual circumstances" present in *Andrews* are not present here. Failing to object to a misstatement of the law that is detrimental to one's client when the harm is so clearly presented by the record on appeal is quite different from (1) determining that potentially objectionable evidence should be allowed to be introduced because it benefits Appellant's case, (2) entering into an agreement with the State to limit the rebuttal evidence introduced as a matter of trial strategy, or (3) failing to object to other potentially objectionable evidence because the most harmful portion of it would then be used as impeachment for one of Appellant's key witnesses or introduced through testimony of the investigator of the incident. *Cf. Garza*, 213 S.W.3d at 348; *Saenzpardo*, 2005 Tex. App. LEXIS 3110, 2005 WL 941339, at *2. Counsel's reasons in *Andrews*, if any, were unnecessary to resolve the ineffective assistance of counsel claim. *See Berry v. State*, No. 05-04-01161-CR, 2005 Tex. App. LEXIS 4960, 2005 WL 1515512, at *3 (Tex. App.—Dallas 2005, no pet.) (op., not designated for publication).

Having reviewed the record in the instant case, we conclude that the facts before us are distinguishable from the facts in *Andrews*. Thus, we decline to hold that the record in this case contains all of the information necessary for us to determine whether counsel was ineffective. Therefore, we hold that Appellant has not met the first prong of *Strickland* because the record does

10

not contain evidence concerning Appellant's trial counsel's reasons for choosing the course he did. As a result, Appellant cannot overcome the strong presumption that his counsel performed effectively. Appellant's second issue is overruled.

## IMPROPER EXPERT TESTIMONY

In his third issue, Appellant contends that the trial court allowed the State to introduce improper expert testimony during the punishment phase of trial.

### Standard of Review and Applicable Law

We review a trial court's decision to admit or exclude scientific expert testimony under an abuse of discretion standard. *See Sexton v. State*, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002). The trial court ruling will be upheld if it is within the zone of reasonable disagreement. *Id*.

A witness may offer an opinion if he possesses specialized knowledge, skill, experience, training, or education related to a fact in issue. TEX. R. EVID. 702. But the trial court serves as the gatekeeper to determine whether the proffered scientific evidence is sufficiently reliable and relevant. *Sexton*, 93 S.W.3d at 99. For scientific evidence to be reliable, the proponent must show that the underlying scientific theory is valid, the technique applying the theory is valid, and the technique was properly applied on the occasion in question. *Id*. at 100.

Also, a lay witness may offer opinions based on his perception when it is helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. TEX. R. EVID. 701. We review a trial court's decision to allow opinion testimony from a lay witness for an abuse of discretion. *See Fairow v. State*, 943 S.W.2d 895, 901 (Tex. Crim. App. 1997).

A violation of the evidentiary rules that results in the erroneous admission of evidence is nonconstitutional error. *See Kirby v. State*, 208 S.W.3d 568, 574 (Tex. App.—Austin 2006, no pet.). Nonconstitutional error is reversible only if it affects the substantial rights of the accused. TEX. R. APP. P. 44.2(b); *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). We will not overturn a criminal conviction if, after examining the record as a whole, there is fair assurance that the error did not influence the jury, or influenced the jury only slightly. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). Accordingly, erroneously admitted evidence is not reversible error when similar evidence was introduced without objection either before or after the complained-of ruling. *See Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010).

**Discussion**

During the guilt-innocence phase of the trial, the State asked Investigator Reeves without objection from Appellant, "[D]o you believe for [N.L.] to be back around [Appellant] would have put him at further risk?" Investigator Reeves answered, "I do." During the punishment phase of the trial, the State asked Investigator Reeves, "What is your opinion with regard to his ongoing risk to children?" Investigator Reeves answered, "I believe that based on the fact that he has twice now injured or abused children that he will do it again." After hearing Investigator Reeves's answer, Appellant objected.

Even if we assume that Appellant's objection during the punishment phase was timely and that Investigator Reeves's opinion was inadmissible, similar evidence was introduced during the guilt-innocence phase without objection. Thus, Appellant was not harmed by the admission of Investigator Reeves's opinion during the punishment phase of the trial. *See id*. We overrule Appellant's third issue.

**DISPOSITION**

Having overruled Appellant's first, second, and third issues, we ***affirm*** the judgment of the trial court.

**BRIAN HOYLE**
Justice

Opinion delivered April 30, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

12



# COURT OF APPEALS
# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS
# JUDGMENT

### APRIL 30, 2013

### NO. 12-11-00250-CR

**MICHAEL ODELL LOMAX,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 3rd Judicial District Court

of Anderson County, Texas. (Tr.Ct.No. 29995)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*