# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-13-00390-CR
NO. 03-13-00391-CR
NO. 03-13-00392-CR

**Andria Stanley, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
NOS. D-1-DC-12-300267, D-1-DC-12-300754, & D-1-DC-12-300755
THE HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Andria Stanley of four felony offenses—two counts of family violence aggravated assault, *see* Tex. Penal Code § 22.02(a)(1), (2), aggravated kidnapping, *see id.* § 20.04, and burglary of a habitation, *see id.* § 30.02(a)(1)—all arising out of a visit she made to her ex-husband's home in the middle of the night. The jury assessed appellant's punishment at confinement in the Texas Department of Criminal Justice for 50 years and 20 years for the assault offenses, *see id.* §§ 12.32, 12.33, 22.02(b)(1), 50 years for the kidnapping offense, *see id.* §§ 12.32, 20.04(c), and 50 years for the burglary offense, *see id.* §§ 12.32, 30.02(d). On appeal, appellant complains about the admission of evidence and the denial of a requested jury charge instruction. Finding no reversible error, we affirm the judgments of conviction for the first count of family violence aggravated assault (Count I in appeal number 03-13-00390-CR), the aggravated

kidnapping (appeal number 03-13-00391-CR), and the burglary of a habitation (appeal number 03-13-00392-CR). However, through our own review of the record, we have found non-reversible clerical error in the written judgment of conviction for the second count of family violence aggravated assault (Count III in appeal number 03-13-00390-CR[1]). We modify that judgment to correct the error and affirm that judgment of conviction as modified.

## DISCUSSION[2]

In two points of error, appellant asserts that the trial court erred by (1) admitting an agreed protective order from a family law proceeding involving appellant and her ex-husband, and (2) failing to include her requested instruction regarding jury unanimity on the burglary of a habitation in the jury charge.

### Admission of Protective Order

At the time the instant offenses were committed, appellant and her ex-husband, Jason Witt, were involved in post-divorce family law proceedings concerning the custody of their two children. At appellant's trial, the State offered a copy of an agreed protective ordered entered in those proceedings, State's Exhibit #71, which contained a finding that appellant "caused serious bodily injury to [Witt]." Appellant objected to the admission of the protective order, asserting that her family law attorney provided ineffective assistance of counsel by advising her to agree to the

---

[1] The State abandoned Count II of the indictment, which also alleged family violence aggravated assault, during trial prior to closing its case-in-chief.

[2] Because the parties are familiar with the facts of these cases, their procedural histories, and the evidence adduced at trial, we limit recitation of them in this opinion to those necessary to advise the parties of the Court's decisions and the basic reasons for them. *See* Tex. R. App. P. 47.1, 47.4.

protective order in the family law proceedings. The trial court overruled appellant's objection and admitted the order as a statement against interest as well as an admission of a party opponent. *See* Tex. R. Evid. 803(24) (providing that statement against penal interest not excluded by hearsay rule), 801(e)(2) (providing that admission by party opponent is not hearsay).

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Sandoval v. State*, 409 S.W.3d 259, 297 (Tex. App.—Austin 2013, no pet.). A trial court abuses its discretion only if its determination "lies outside the zone of reasonable disagreement." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *Sandoval*, 409 S.W.3d at 281. We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's decision if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009); *Sandoval*, 409 S.W.3d at 281. If the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, we will uphold that decision. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Sandoval*, 409 S.W.3d at 297.

To establish ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence both deficient performance by counsel and prejudice suffered by the appellant.[3] *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Nava v. State*, 415 S.W.3d 289, 307

---

[3] For the sake of our discussion, we will assume without deciding that appellant was entitled to the effective assistance of counsel under *Strickland* at the protective order hearing, a civil proceeding separate from the criminal proceeding. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (setting forth standard of review for analyzing claim of ineffective assistance of counsel in criminal case).

(Tex. Crim. App. 2013). The appellant must first demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Nava*, 415 S.W.3d at 307. The appellant must then show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 308. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Strickland*, 466 U.S. at 700; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

Appellate review of counsel's representation is highly deferential; we must "indulge in a strong presumption that counsel's conduct was *not* deficient." *Nava*, 415 S.W.3d at 307–08; *see Strickland*, 466 U.S. at 686. To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Moreover, "[t]he mere fact that another attorney might have pursued a different course of action . . . does not suffice to prove a claim of ineffective assistance of counsel." *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012); *see Munoz v. State*, No. 03-12-00809-CR, 2014 WL 6208654, at *5 (Tex. App.—Austin Nov. 14, 2014, pet. ref'd) (mem. op., not designated for publication); *Harris v. State*, 125 S.W.3d 45, 54 (Tex. App.—Austin 2003, pet. ref'd, untimely filed).

At trial, appellant called the attorney who represented her in the family law proceedings to testify, outside the jury's presence, about his advice to her that she agree to the

4

protective order in lieu of testifying at the protective order hearing.[4]  Her attorney testified that he

advised her to agree to the protective order in lieu of testifying at the hearing based on "[his] concern

that she would state something inadvertently on the record that would harm her greatly in her

criminal case."  He said that he "didn't want any more information being put on the record in a case

related to anything related to this relationship because I didn't want it to be used against her in the

criminal case."  In her objection at trial and in her argument on appeal, appellant maintains that this

was faulty legal advice because she could have invoked her Fifth Amendment right against

self-incrimination as to any topics that might adversely affect her criminal case.  However, her family

law counsel averred that he and appellant had been "very close friends for a long period of time"

before he began representing her in the family law matters.  He expressed his understanding that the

family law judge presiding over the protective order hearing would have granted appellant's

invocation of the Fifth Amendment right regarding the events forming the basis of the instant

criminal charges, but indicated that "there were ancillary matters that possibly could have affected

what went on."  Appellant's family law attorney stated:

> At that point, honest to goodness, my only concern to her was to avoid her
> stepping in land mines that she set for herself, which she has a tendency to do, and

---

[4]  At the time of the instant offenses, a hearing regarding final arrangements for custody and child support was pending.  Also pending was a contempt proceeding relating to appellant's failure to comply with the family law court's previously entered order.  Upon learning that his client had been assaulted and shot, Witt's family law attorney filed an application for a protective order.  All of these issues were taken up at the final hearing.  In her brief, appellant conflates the contempt hearing and the protective order hearing.  However, it is clear from the record that these hearings, relating to mutually exclusive issues, were separate and distinct, although scheduled on the same date, and the legal advice at issue related only to the protective order hearing.

I didn't want something to happen to her in the criminal case [sic] that affected her here. That was my biggest concern.

. . .

Because my concern was that she would say something that would harm her in this criminal case in some way, shape or form. Because I had recently just gone over the whole family law case. It's voluminous. It's a huge file.

. . .

I read everything in that file and there [were] a lot of things that were said and done during the course of the family law case that concerned me, and my concern was she's going to do something like this again on the witness stand and it's going to hurt her in the criminal case.

Appellant asserts in her brief that counsel's testimony "betrays a misunderstanding of the scope of the Fifth Amendment privilege." This argument assumes that the ancillary matters counsel referenced were matters to which she could have invoked her Fifth Amendment right and remained silent. However, while appellant's family law attorney repeatedly expressed his concern about appellant testifying about matters that could be used against her in the criminal proceeding, he did not express that these were matters exposing her to criminal liability or criminal responsibility to which she could have invoked her right to remain silent. This is an assumption appellant makes, which is not founded in the record. *See Villa v. State*, 417 S.W.3d 455, 463 (Tex. Crim. App. 2013) ("[C]ounsel's alleged deficiency must be affirmatively demonstrated in the trial record."). In fact, the tenor of counsel's testimony suggested otherwise.

Furthermore, in testifying about the circumstances under which he advised appellant to agree to the protective order, counsel indicated that it was ultimately appellant's decision:

I strongly suggested that she sign it. I didn't force her to do anything, but I said in my legal opinion I think you need to sign this, I think the Court is going to grant it either way, and I think that it's in your best interest to sign this to keep from getting into any ancillary matters that may hurt you in your criminal case.

6

Counsel also recounted the fact that appellant insisted on making some changes to the order before signing it.

Based on the testimony of appellant's family law attorney regarding his personal acquaintance with appellant, his familiarity with the family law case, and his knowledge of the relationship between appellant and her ex-husband, the trial court could have reasonably concluded that counsel's advice to her at the protective order hearing was the product of an informed strategic and tactical decision, which appellant agreed with and followed at the time but later criticized in a self-serving attempt to exclude her admission. Based on the record before it, the trial court could have reasonably found that counsel's performance did not fall below an objective standard of reasonableness under prevailing professional norms—that is, that appellant failed to demonstrate deficient performance on the part of her family law counsel. *See Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of an informed strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate 'unless the challenged conduct was so outrageous that no competent attorney would have engaged in it.'") (quoting *Goodspeed*, 187 S.W.3d at 392). Accordingly, we conclude that the trial court did not abuse its discretion in admitting the protective order into evidence at appellant's trial.

Moreover, even assuming the trial court erred in admitting the protective order into evidence, we would nevertheless conclude that the error did not constitute reversible error. *See* Tex. R. App. P. 44.2(b). The erroneous admission of evidence is non-constitutional error. *Kirby v. State*, 208 S.W.3d 568, 574 (Tex. App.—Austin 2006, no pet.); *see Coble v. State*, 330 S.W.3d 253, 280

7

(Tex. Crim. App. 2010); *Casey*, 215 S.W.3d at 885. Non-constitutional error is reversible only if it affects the substantial rights of the defendant. *See* Tex. R. App. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). We will not overturn a criminal conviction for non-constitutional error if, after examining the record as a whole, we have fair assurance the error did not influence the jury, or influenced the jury only slightly. *Barshaw*, 342 S.W.3d at 93; *Kirby*, 208 S.W.3d at 574.

In assessing potential harm, our focus is not on whether the outcome of the trial was proper despite the error but on whether the error had a substantial or injurious effect or influence on the jury's verdict. *Barshaw*, 342 S.W.3d at 93–94. We review the entire record to ascertain the effect or influence on the verdict of the wrongfully admitted evidence. *Id.* at 93; *see Coble*, 330 S.W.3d at 280 (in conducting harm analysis "we examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence"); *see also Moon v. State*, 44 S.W.3d 589, 595 (Tex. App.—Fort Worth 2001, pet. ref'd). We consider all the evidence that was admitted at trial, the nature of the evidence supporting the verdict, the character of the alleged error, and how the evidence might be considered in connection with other evidence in the case. *Barshaw*, 342 S.W.3d at 94. We may also consider the jury instructions, the parties' theories of the case, closing arguments, voir dire, and whether the State emphasized the error. *Id.*; *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

In his testimony at trial, appellant's ex-husband described the events of that night, providing details of appellant's unauthorized entry into his home and the ensuing attack. He testified that he awoke during the night to sounds in his bedroom. He saw a figure and then was struck in the

8

head with a wooden baton-like object. He attempted to defend himself, struggling with his assailant. His attacker yelled, and Witt recognized the voice as appellant. Appellant then fired a gun at Witt, and he turned on the lights and saw appellant standing with a gun in her hand. Holding the gun on him, appellant demanded that he make concessions in their ongoing custody battle. Witt recounted how appellant then forced him at gunpoint to lie face down on the bed and bound his hands behind his back and bound his feet at the ankles. She next wrapped him up in the bed sheets, sat him up on the bed, and wrapped plastic wrap around his head. Panicked, Witt began to struggle and fell to the floor. As he lay on the floor, appellant struck him repeatedly on the back of the head with the wooden object. As he struggled, Witt managed to free one hand and his feet. He then attempted to get the gun, which was at the end of the bed, as did appellant. As they struggled for the gun, appellant fired the gun at Witt, striking him in the face. They continued to struggle over the gun, and eventually Witt gained control of the gun. He struck appellant with the barrel of the gun, pushed her out of his bedroom, and managed to secure and lock his bedroom door. He then locked himself in his bathroom and called 911.

Witt's testimony was corroborated by physical evidence recovered from his home (including a broken wooden baton and roll of plastic wrap, both with appellant's and Witt's DNA on them) and from appellant (blood containing Witt's DNA on the bottom of one of the shoes she wore that night), photographic evidence depicting Witt's injuries (which included a gunshot wound to his cheek as well as contusions and lacerations to his face and head, some of which required staples and sutures, and ligature marks on his wrists), medical evidence from treating hospital physicians, police officers' testimony regarding Witt's condition and demeanor when they arrived

9

at his home (including his initial refusal to come out of his locked bathroom until he was convinced it was in fact the police, and the fact that he was covered in blood when he eventually emerged), as well as the testimony of appellant's mother regarding admissions appellant made upon her return from Austin (that she went to visit Witt, that she had her mother's gun with her, that the gun "went off," and that Witt "might have been hit"). The prosecutors did not mention the protective order in closing argument, nor did the State overly emphasize the protective order otherwise.

After examining the record as a whole, including the strength of the State's case, we have fair assurance that the admission of the protective order, if it was error, did not influence the jury or had but a slight effect. Therefore, any error in admitting the order was harmless.

We overrule appellant's first point of error.

## Denial of Requested Jury Charge Instruction

In her second point of error, appellant complains about the trial court's failure to include her requested jury charge instruction concerning unanimity on the burglary of a habitation charge and argues that she was harmed by the omission of such an instruction. The burglary

indictment in this case charged appellant with burglary of a habitation in four separate paragraphs,[5]

alleging (in relevant part) that appellant did then and there

> with intent to commit the felony offense of Aggravated Assault, enter a habitation, without the effective consent of Jason Witt, the owner thereof . . .
>
> intentionally or knowingly enter a habitation, without the effective consent of Jason Witt, the owner thereof, . . . and attempted to commit or committed the felony of Aggravated Assault, . . .
>
> with intent to commit the felony offense of Kidnapping, enter a habitation, without the effective consent of Jason Witt, the owner thereof, . . . [or]
>
> intentionally or knowingly enter a habitation, without the effective consent of Jason Witt, the owner thereof, . . . and attempted to commit or committed the felony of Kidnapping, . . . .[6]

---

[5] The four paragraphs were originally contained in the indictment as separate counts. However, prior to the start of trial, the State abandoned—without objection from appellant—the count language in order to present four alternative paragraphs. *See Martinez v. State*, 225 S.W.3d 550, 554 (Tex. Crim. App. 2007) ("When the State wishes to charge multiple offenses in a single indictment, it is required by statute to set out each separate offense in a separate "count." Then separate "paragraphs" within a single count may allege different methods of committing the same offense." (citing Tex. Code Crim. Proc. art. 21.24(a), (b))); *Owens v. State*, 96 S.W.3d 668, 673 (Tex. App.—Austin 2003, no pet.) ("As a general rule, a 'count' is used to charge the offense itself and a 'paragraph' is that portion of a count which alleges the method of committing the offense.").

[6] Each of the paragraphs also contained an allegation that Witt was a family member with whom appellant had had a dating relationship, *see* Tex. Fam. Code §§ 71.0021(b) (defining "dating relationship" as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature"), .003 (defining "family" to include "individuals who are former spouses of each other [or] individuals who are the parents of the same child"), as well as a deadly weapon allegation, *see* Tex. Code Crim. Proc. art. 42.12, § 3g(a)(2) (providing for affirmative finding upon showing that defendant used or exhibited deadly weapon during commission of felony or immediate flight therefrom), which we omit here because they are not relevant to the complaint appellant raises in this point of error.

*See* Tex. Penal Code § 30.02(a)(1) (providing that offense of burglary is committed by entering habitation without consent of owner with intent to commit felony, theft, or assault), (3) (providing that offense of burglary is committed by entering habitation and then committing or attempting to commit felony, theft, or assault).

At trial, appellant asked for language to be included in the jury charge instructing the jurors that in order to convict appellant of burglary of a habitation, they must unanimously agree as to how she committed the burglary. Concluding that the jury did not have to unanimously agree on the manner and means by which appellant committed burglary of a habitation, the trial court denied appellant's requested instruction.

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth analysis for determining whether jury charge error requires reversal). If the jury charge error has been properly preserved by an objection or request for instruction, reversal is required if the appellant has suffered "some harm" from the error. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *see Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) ("If there was error and appellant objected to the error at trial, reversal is required if the error 'is calculated to injure the rights of the defendant,' which we have defined to mean that there is 'some harm.'").

Texas law requires a unanimous jury verdict in all criminal cases. *See* Tex. Code Crim. Proc. art. 36.29(a); *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). More specifically, "the jury must be unanimous in finding every constituent element of the charged offense in all criminal cases." *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014) (citing *Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007)). Unanimity in this context means that each and every juror agrees that the defendant committed the same, single, specific criminal act. *Ngo*, 175 S.W.3d at 745; *see Cosio*, 353 S.W.3d at 771 (unanimous verdict "means that the jury must 'agree upon a single and discrete incident that would constitute the commission of the offense alleged'") (quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)). "[T]he jury must be instructed that it must unanimously agree on one incident of criminal conduct (or unit of prosecution), based on the evidence, that meets all of the essential elements of the single charged offense beyond a reasonable doubt." *Saenz v. State*, 451 S.W.3d 388, 390 (Tex. Crim. App. 2014) (quoting *Cosio*, 353 S.W.3d at 776).

However, the requirement of jury unanimity is not violated by a jury charge that presents the jury with the option of choosing among various alternative manner and means of committing the same statutorily defined offense. *Jourdan*, 428 S.W.3d at 94; *Pizzo*, 235 S.W.3d at 715. "A jury must unanimously agree about the occurrence of a single criminal offense, but they need not be unanimous about the specific manner and means of how that offense was committed." *Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011); *see Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008) ("The jury must agree that the defendant committed one specific crime. That does not mean, however, that the jury must unanimously find that the

13

defendant committed that crime in one specific way or even with one specific act." (internal citations omitted)); *Miranda v. State*, 391 S.W.3d 302, 310 (Tex. App.—Austin 2012, pet. ref'd) ("Jury unanimity is required with respect to all essential elements of the offense at issue; however, the jury need not unanimously agree on the specific method of committing a single offense.").

"'[M]anner or means' describes *how* the defendant committed the specific statutory criminal act." *Ngo*, 175 S.W.3d at 745. The State is permitted to plead alternate manner and means of committing the same offense. *Landrian*, 268 S.W.3d at 535–36. "'Therefore, different modes of commission may be presented in a jury instruction in the disjunctive when the charging instrument, in a single count, alleged the different means in the conjunctive.'" *Jourdan*, 428 S.W.3d at 94 (quoting *Pizzo*, 235 S.W.3d at 715). "Determining whether a statute creates multiple offenses (which requires unanimity as to one offense) or merely a single offense that may be committed by one of multiple manner and means (which do not require unanimity) 'is a function of legislative intent, and in examining statutory language for legislative intent, we inquire into the 'gravamen' of the offense.'" *Irielle v. State*, 441 S.W.3d 868, 874 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (quoting *Jourdan*, 428 S.W.3d at 95–96).

The gravamen of a burglary offense is the unauthorized entry with the requisite mental state or further requisite act. *See DeVaughn v. State*, 749 S.W.2d 62, 65 (Tex. Crim. App. 1988) ("The gravamen of the offense of burglary clearly remains entry of a building or habitation without the effective consent of the owner, accompanied by either the required mental state, under §§ 30.02(a)(1) and (2) . . . or the further requisite acts or omissions, under § 30.02(a)(3)."); *see also Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006) (unlawful entry is gravamen of

14

burglary because offense is complete once unlawful entry is made).  Burglary of a habitation may be committed three different ways.  *See* Tex. Penal Code § 30.02(a)(1)–(3) (offense of burglary is committed by (1) entering habitation with intent to commit felony, theft, or assault; (2) remaining concealed in habitation with intent to commit felony, theft, or assault; or (3) entering habitation and then committing or attempting to commit felony, theft, or assault); *see also Shaw v. State*, 557 S.W.2d 305, 306 (Tex. Crim. App. 1977), *overruled in part on other grounds by Almanza*, 686 S.W.2d at 174.  These different ways are not separate burglary offenses; they are alternative means of committing the single offense of burglary.  *Washington v. State*, No. 03-11-00428-CR, 2014 WL 3893060, at *3–4 (Tex. App.—Austin Aug. 6, 2014, pet. ref'd) (mem. op., not designated for publication); *Martinez v. State*, 269 S.W.3d 777, 783 (Tex. App.—Austin 2008, no pet.).

Tracking the indictment in this case, the application paragraphs of the jury charge concerning the burglary offense instructed the jurors that they could convict appellant of burglary of a habitation if they found that she entered the home of Jason Witt, a family member, without his effective consent:

- with intent to commit the felony offense of aggravated assault;

- and attempted to commit or committed the felony of aggravated assault;

- with intent to commit the felony offense of kidnapping;

- and attempted to commit or committed the felony of kidnapping.

The charge, in other words, submitted the four burglary allegations, relating to the different sections of the burglary of a habitation statute, disjunctively.  Thus, the jury charge set forth the single,

15

specific statutory offense of burglary of a habitation and included four alternative manner and means of committing that offense. Alternate manner and means of committing the same offense may be submitted to the jury without violating the right to a unanimous jury verdict. *See Martinez v. State*, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004) ("The unanimity requirement is not violated by instructing the jury on alternate theories of committing the same offense[.]").

At trial, appellant asserted that the failure to include the jury unanimity instruction denied her the opportunity to have a unanimous verdict on the burglary of a habitation, which was "a violation of [her] rights under the U.S. Constitution and the Texas Constitution due course of law." In this case, however, whether appellant entered Witt's home with the intent to commit aggravated assault or kidnapping, or entered Witt's home and committed (or attempted to commit) aggravated assault or kidnapping, only a single unlawful entry into the home was committed. Therefore, the jury charge instructing the jury to find appellant guilty if it found *either* that she had unlawfully entered the victim's habitation with intent to commit a felony *or* that she had unlawfully entered the victim's habitation and then committed or attempted to commit a felony did not deprive appellant of her constitutional right to a unanimous verdict. The unauthorized entry with intent to commit a felony or the unauthorized entry and the commission (or attempted commission) of a felony were simply alternative methods of committing the same burglary offense. Hence, the trial court did not err by denying appellant's requested jury unanimity instruction as no such unanimity was required.

On appeal, appellant maintains that the failure to instruct the jury that its verdict required unanimous agreement as to the manner and means of committing the burglary of habitation

16

possibly subjected her to double jeopardy because the predicate offense in two of the paragraphs of the burglary charge (the aggravated assault) was also charged in a separate indictment.[7] *See Langs v. State*, 183 S.W.3d 680, 686 (Tex. Crim. App. 2006) (defendant may not be punished for both underlying felony and burglary if burglary allegation is that defendant entered home without consent of owner and then committed underlying felony within home; conversely, substantive felony and burglary by entering home without consent of owner and with felonious intent to commit that substantive felony are two distinct offenses not constituting double jeopardy violation). Although acknowledging that the subsections of the burglary statute are merely alternative manner and means of committing burglary, appellant argues that "under the circumstances" of this case, the lack of unanimity between the statutory subsections, "opened the possibility" that the jury's general verdict resulted in a double jeopardy violation.

However, even had the trial court included the requested unanimity instruction, the double jeopardy "possibility" would not have been resolved. The verdict form for the burglary charge required the jury to return a general verdict: "We, the Jury, find the defendant, [appellant], (guilty or not guilty) of the offense of Burglary of a Habitation." Even had the court included

---

[7] Initially, we note that the record does not reflect that appellant raised her double jeopardy concerns at trial—during the charge conference when requesting the unanimity instruction on the burglary offense or at any other time during trial. *See* Tex. R. App. P. 33.1(a)(1)(A) (to preserve error, party must not only present timely request or objection to trial court but must also state grounds for request or objection "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context"); *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006) (general or imprecise objection suffices to preserve error "only if the legal basis for the objection is *obvious* to the court and to opposing counsel"); *see also Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014), *cert. denied*, 135 S. Ct. 1158 (2015) (point of error on appeal must comport with objection made at trial). Arguably, appellant's complaint on appeal was not properly preserved for appellate review.

appellant's requested unanimity instruction and required the jury to be unanimous as to the manner and means by which appellant committed the burglary, there would be no way of knowing from the general verdict which manner and means the jury was unanimous about. There is no requirement that the jury designate which of the alternate manner and means of committing the specific offense the jurors found to have been proven. Thus, appellant's requested jury unanimity instruction did not address, and certainly did not eliminate, the double jeopardy concern appellant now raises for the first time on appeal. Even with the requested instruction, the "possibility" that the jury's general verdict resulted in a double jeopardy violation still existed. With or without the requested instruction, appellant was in the same position regarding a potential double jeopardy violation.

For that reason, even assuming the denial of the requested instruction was error, which we conclude it was not, we reject appellant's claim that she suffered "some harm" because the trial court denied her jury unanimity instruction. Once again, if jury charge error has been properly preserved by an objection or request for instruction, as in this case, reversal is required if the appellant has suffered "some harm" from the error. *Vega*, 394 S.W.3d at 519. "This means that the trial record must demonstrate that there is some actual harm and not just a theoretical complaint." *Cornet v. State*, 417 S.W.3d 446, 449 (Tex. Crim. App. 2013). Appellant's contention that she was harmed by the omission of the requested jury unanimity instruction is based solely on the hypothetical possibility of a double jeopardy violation—a wholly theoretical complaint. Because the jury charge submitted four alternative burglary theories, only one of which posed a possible double jeopardy violation, the record fails to demonstrate actual harm. *See Langs*, 183 S.W.3d at 687 ("[W]hen separate theories for an offense are issued to the jury disjunctively, a double jeopardy

18

violation is not clearly apparent on the face of the record if one of the theories charged would not constitute a double jeopardy violation and there is sufficient evidence to support that valid theory. The fact that the jury's verdict *could* have relied on a theory that would violate the Double Jeopardy Clause, is not sufficient to show a constitutional violation 'clearly apparent on the face of the record.'"); *Wilson v. State*, No. 05-11-01195-CR, 2012 WL 5504025, at *3 (Tex. App.—Dallas Nov. 14, 2012, pet. ref'd) (not designated for publication) ("When both theories of burglary described above are submitted to the jury disjunctively, a double jeopardy violation is not clearly apparent on the face of the record if there is sufficient evidence to support the theory that would not constitute a double jeopardy violation.").

We overrule appellant's second point of error.

**Clerical Error in Judgment**

On review of the record, we observe that the written judgment of conviction for the second count of family violence aggravated assault in this case (Count III in appeal number 03-13-00390-CR) contains a clerical error. The judgment states that the "Statute for Offense" is "22.02(a)(1) Penal Code." The statute for the family violence aggravated assault offense as alleged in Count III of the indictment in this case, however, is section 22.02(a)(2) of the Penal Code. This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 46.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we modify the incorrect judgment of conviction for the second count of family violence aggravated assault (Count III in appeal number 03-13-00390-CR) to reflect the correct Penal Code section.

19

**CONCLUSION**

Having overruled appellant's two points of error, we affirm the judgments of conviction for the first count of family violence aggravated assault (Count I in appeal number 03-13-00390-CR), the aggravated kidnapping (appeal number 03-13-00391-CR), and the burglary of a habitation (appeal number 03-13-00392-CR). To correct non-reversible clerical error in the judgment of conviction for the second count of family violence aggravated assault (Count III in appeal number 03-13-00390-CR), we modify that judgment as noted above and affirm that judgment of conviction as so modified.

_____

Cindy Olson Bourland, Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

03-13-00390-CR      Affirmed; Modified and, as Modified, Affirmed

03-13-00391-CR      Affirmed

03-13-00392-CR      Affirmed

Filed:   July 30, 2015

Do Not Publish